175 N.J. Super. 26 (1980)
417 A.2d 560
CHRISTOPHER LAW, AN INFANT BY HIS GUARDIAN AD LITEM, ANITA LAW, AND ANITA LAW, INDIVIDUALLY, AND DARRYL BERGER, AN INFANT BY HIS GUARDIAN AD LITEM, LEVADA BERGER, AND LEVADA BERGER, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
NEWARK BOARD OF EDUCATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1980.
Decided June 25, 1980.
*28 Before Judges BISCHOFF, BOTTER and MORTON I. GREENBERG.
*29 Alan Y. Medvin, of counsel and on the brief, argued the cause for appellants (Horowitz, Bross & Sinins, attorneys).
George P. Lacay, of counsel and on the brief, argued the cause for respondent (Edward V. Ryan, attorney).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
This appeal arises from the filing of a complaint against the defendant Newark Board of Education (board) and the City of Newark seeking recovery of damages resulting from an accident in which the infant plaintiffs Christopher Law and Darryl Berger were run over by a city fire truck while participating in a recreational program run by the board.[1]
Trial disclosed the following facts. During the early evening of October 7, 1975 plaintiffs Christopher Law, age 8, and Darryl Berger, age 11, were playing basketball with several other boys as part of a recreational program run by defendant Newark Board of Education at the McKinley Street School in Newark. Under this program the board supplied recreational facilities and supervisors at the McKinley Street School from 8:30 a.m. to 9:00 p.m. Although children apparently were not required to participate in any particular activity or given instruction, they were allowed to use the school facilities under the supervision of board employees.
At about 7 that evening the Newark Fire Department responded to a dumpster fire on the school playground. Two fire trucks, a "pumper" and a "hook and ladder," entered the school yard through its only practicable entrance, a gate approximately 12 feet wide. While the firefighters extinguished the fire quickly, the excitement quite naturally attracted the young children playing in the school yard, and the hook and ladder was soon covered with children, even though one fireman stayed *30 with the truck. When the other firemen returned, however, they ordered the children off and prepared to leave.
Christopher and Darryl were among those children drawn to the scene by the excitement of the fire. They repeatedly climbed on and jumped off the truck until ordered off by the returning firemen. But as the hook and ladder left the school yard the two boys jumped back on  out of the sight of the firemen. And while the firemen stopped the truck to order some other children off, Christopher and Darryl remained on the truck until it had passed through the school yard gate and turned into the street. Unfortunately when the boys attempted to jump off the moving truck, they slipped and fell underneath. Both boys were run over by the truck and seriously injured. The firemen returned to their station ignorant of the accident. Moreover, the playground supervisors were not near the gate when the truck left, despite the number of children around the truck and the obvious danger.
Prior to trial, all plaintiffs settled with the City of Newark and settlements in the following amounts were approved by the court:
$36,900 in favor of Levada Berger, individually;
$28,100 in favor of Darryl Berger, by his guardian ad litem Levada Berger;
$12,000 in favor of Anita Law, individually; and
$13,000 in favor of Christopher Law, by his guardian ad litem Anita Law.
Despite the settlements, the case was tried to a jury against both defendants, the board and the City of Newark. At the conclusion of trial the jury found defendant board 75% negligent and the City of Newark 25% negligent and awarded damages to Christopher Law in the amount of $1,500, to Anita Law in the amount of $4,700, to Darryl Berger in the amount of $70,000 and to Levada Berger in the amount of $26,200.
On post-verdict motions by both plaintiffs and the board the trial judge held that under N.J.S.A. 59:9-3 all plaintiffs except Darryl Berger were barred from recovery since the amounts they received in settlement exceeded the damages awarded them by the jury, and that the $70,000 awarded Darryl Berger must be reduced by $28,100, the amount received in settlement. *31 The court then denied plaintiffs' motion for a new trial on damages but granted the board's motion for judgment notwithstanding the verdict on the ground that plaintiffs' action was barred by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
Plaintiffs appeal from the orders of the trial court granting the board's motion for a judgment notwithstanding the verdict, molding the verdict and denying their motion for a new trial on damages. The board appeals from the court's order molding the verdict. The appeals have been consolidated.
Multiple legal issues are presented by the consolidated appeals.

I. The Tort Claims Act
At the conclusion of plaintiffs' case defendant board moved unsuccessfully for judgment under R. 4:40-1. At the conclusion of trial the board renewed its motion, arguing that plaintiffs had failed to establish a standard of conduct by which the action of the board's employees were to be evaluated and that the board is immune from liability by virtue of the Tort Claims Act.
The trial judge found the crucial issue to be "whether the municipally owned hook-and-ladder can be deemed a public recreational facility under the supervision of the Board of Education...." The judge concluded that plaintiffs' claim was barred by the Tort Claims Act since the truck was neither a public recreational facility under the board's supervision nor a "dangerous condition" of public property. Plaintiffs argue on appeal that the board may be held liable under the act for its employees' negligent supervision of the children. We agree and reverse the judgment entered for the board notwithstanding the verdict.
A public entity is liable for injuries proximately caused by acts or omissions of its employees within the scope of their employment but may not be held liable when the employee is not liable, N.J.S.A. 59:2-2, and "a public employee is liable for injury caused by his act or omission to the same extent as a private person" unless granted immunity. N.J.S.A. 59:3-1. *32 See, e.g., Steward v. Magnolia, 134 N.J. Super. 312, 320 (App. Div. 1975), certif. den. 68 N.J. 481 (1975). Thus, defendant board is not immune under the Tort Claims Act if its employees may be held liable. See, e.g., Blanchard v. Kearny, 145 N.J. Super. 246, 249 (Law Div. 1976), aff'd o.b. 153 N.J. Super. 158 (App.Div. 1977).
N.J.S.A. 59:3-11 provides:
A public employee is not liable for the failure to provide supervision of public recreational facilities. Nothing in this section exonerates a public employee for negligence in the supervision of a public recreational facility.
The comment to this section explains:
This immunity is similar to that contained in § 59:2-7 of this act, but a public employee (and hence a public entity) is not exonerated for negligence once he undertakes to supervise the facility.
N.J.S.A. 59:3-11 thus makes it clear that while a public employee may not be held liable for his failure to provide supervision, once he undertakes supervision he must not perform it in a negligent manner. Klienke v. Ocean City, 163 N.J. Super. 424, 428, 433 (Law Div. 1978). See, also, Titus v. Lindberg, 49 N.J. 66 (1967); Sutphen v. Benthian, 165 N.J. Super. 79 (App.Div. 1979).
The record in this case clearly establishes that defendant board is not immune from liability by virtue of N.J.S.A. 59:3-11. Here, plaintiffs Christopher Law and Darryl Berger were injured while participating in a recreational program supervised by the board's employees. The "recreational facility" used was the school playground and its equipment, not the fire truck, and the jury's finding of negligence in performing such supervision in the circumstances of this case is fully supported by the record. Moreover, it is not significant that plaintiffs may have fallen off the truck after it passed through the gate. See Caltavuturo v. Passaic, 124 N.J. Super. 361, 366-367 (App.Div. 1973), certif. den. 63 N.J. 583 (1973). The negligence of the board's employees, as the jury found, proximately caused plaintiffs' injuries, and the board does not contend otherwise.
The board further asserts that the decision of its employees amounted to a discretionary act immunized from liability by N.J.S.A. 59:3-2. But there can be no doubt that the ordinary *33 negligence committed by the board's employees is not the type of high-level discretionary activity granted immunity by the act. See, e.g., Sutphen v. Benthian, supra, 165 N.J. Super. at 82; Kisielewski v. State, 68 N.J. Super. 258, 262 (App.Div. 1961), certif. den. 36 N.J. 144 (1961); Wuethrich v. Delia, 134 N.J. Super. 400, 411 (Law Div. 1975), aff'd on other grounds 155 N.J. Super. 324 (App.Div. 1978), certif. den. 77 N.J. 486 (1978); cf. Costa v. Josey, 83 N.J. 49 (1980). Moreover, the board's claim is simply unsupported by the record. While the board did not waive its defenses, as plaintiff asserts, but properly raised them in its answer, the board did not sustain its burden of proving that its employees were engaged in a high-level discretionary activity. See Ellison v. South Amboy Housing Auth., 162 N.J. Super. 347, 351 (App.Div. 1978).

II. Molding The Verdict
At the conclusion of trial the jury was charged on the principles of comparative negligence, as those principles applied to the board, the City of Newark and the infant plaintiffs. They were also asked to determine whether each infant plaintiff has the "capacity to perceive the risk involved and to avoid the danger of accident to himself." This last question was answered in the negative as to both infant plaintiffs.
In apportioning liability the jury attributed 0% negligence to each of the plaintiffs, 25% to the City of Newark and 75% to the board, and assessed damages for each of the four plaintiffs in the amounts previously stated.
After hearing argument on motions to mold the verdicts, the judge, relying on N.J.S.A. 59:9-3, reduced each plaintiff's verdict pro tanto by the amount received in settlement from the City of Newark. This effectively denied any further recovery to plaintiff Law and plaintiff Levada Berger since the amount received in settlement exceeded the damages awarded them by the jury. In this same fashion the judge reduced the $70,000 verdict awarded Darryl Berger by $28,100, the amount he received in settlement.
*34 Both parties contend that the method adopted by the trial judge in molding the verdict was erroneous. The board contends it is liable for only 75% of the amount awarded Darryl, reduced by the true value of the settlement received by him. It argues that part of the $36,900 awarded to Levada Berger should be used to reduce Darryl Berger's recovery since it was received as compensation for Darryl's injuries. This contention is without merit. The record discloses the amount received by Levada Berger represented compensation to her for the medical expenses she incurred in the past and may incur in the future. Her recovery may not be used to reduce the separate damages awarded by the jury to Darryl.
The board argues in the alternative that it is entitled to have the verdicts molded to represent a judgment for 75% of the amount awarded Darryl, reduced by the amount actually received in settlement. Again we find this contention to be without merit. Application of this method would result in both a pro tanto and a pro rata reduction in the verdicts. This is contrary to both the spirit and the plain meaning of the statutes.
Plaintiffs argue on appeal that under the principles of comparative negligence they should receive a judgment for 75% of the verdicts and base their argument on N.J.S.A. 59:9-4 and Rogers v. Spady, 147 N.J. Super. 274 (App.Div. 1977). We disagree.
N.J.S.A. 59:9-3 provides:
Notwithstanding any other law, in any case where a public entity or public employee acting within the scope of his employment is determined to be a joint tortfeasor:
a. The public entity or public employee shall be required to contribute to a joint tortfeasor only to the extent of the recovery provided for under this act;
b. Any payment received by the injured party on account of a settlement or a judgment paid by an alleged tortfeasor shall be reduced pro tanto from the injured party's judgment against any other tortfeasor.
The comment annexed to this section of the Tort Claims Act explains the purposes of the mandated pro tanto reduction:
The purpose of subparagraph (a) is to make clear that in situations where a public entity or public employee is a joint tortfeasor and hence jointly and severally liable with any other tortfeasor to the injured party, the public entity's or public employee's liability and duty of contribution only extends to the *35 damages provided under the act. Thus the pro rata share for which an entity or employee is responsible in contribution must be determined in relation to the possible amount of recovery permitted in section 59:9-2 rather then in relation to the claimant's total judgment. To the extent that this provision is inconsistent with the "Joint Tortfeasors Contribution Law," N.J.S.A. 2A:53-1 et seq., this act shall be controlling.
Subparagraph (b) mandates that any settlement by a joint-tortfeasor in a suit involving a public entity or public employee shall be deducted pro tanto from any judgment against another joint tortfeasor. This provision changes the existing law which provides that when a joint tortfeasor settles with a claimant there will be a pro rata reduction of the judgment against the remaining tortfeasors. In other words, the plaintiff does not now recover the full amount of his judgment if he settles with a joint tortfeasor below his pro rata share of the judgment (to the extent of the difference).
The above provision would rectify this inequity and permit a plaintiff to recover from any non-settling tortfeasor the difference between the total amount of his judgment and the amount of any settlement he may have reached. In addition to more fairly and fully compensating an injured plaintiff, this provision will undoubtedly encourage settlements by all parties.
Such statements and comments may be considered in determining legislative intent.
Under N.J.S.A. 59:9-3 plaintiffs can recover the full amount of the verdict from defendant board to the extent authorized by the act, see N.J.S.A. 59:9-2, less the amount actually received from any joint tortfeasors. See Polyard v. Terry, 148 N.J. Super. 202, 206-208 (Law Div. 1977), rev'd on other grounds 160 N.J. Super. 497 (App.Div. 1978), aff'd o.b. 79 N.J. 547 (1979).
N.J.S.A. 59:9-4 incorporates principles of comparative negligence into the Tort Claims Act and provides:
Contributory negligence shall not bar recovery in an action by any party or his legal representative to recover damages to the extent permitted under this act if such negligence was not greater than the negligence of the party against whom recovery is sought, but any damages sustained shall be diminished by the percentage of negligence attributable to the person recovering.
In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:
a. The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages to the extent permitted under this act.
b. The extent, in the form of a percentage, of each party's negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%.
c. The judge shall mold the judgment from the findings of fact made by the trier of fact in accordance with the provisions of this act.
The Comparative Negligence Law, N.J.S.A. 2A:15-5.1 et seq., contains a substantially identical provision. N.J.S.A. 2A:15-5.2.
*36 In Rogers v. Spady, supra, this court held that the Comparative Negligence Law alters the traditional relationship between joint tortfeasors and requires each tortfeasor to be held liable "for the same percentage of the judgment as the percentage of negligence found attributable to him." Rogers v. Spady, supra 147 N.J. Super. at 277. See, also, Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 569 (1980). When a plaintiff settles with a codefendant, the nonsettling joint tortfeasors remain liable for the percentage of negligence attributable to them. Rogers v. Spady, supra.
The court in Rogers recognized that the Comparative Negligence Law provides that the recovering party may recover the full amount of the molded verdict from any of the responsible parties. That party may in turn obtain contribution from the other joint tortfeasors to the extent its payment exceeded its percentage share. N.J.S.A. 2A:15-5.3. See Rogers v. Spady, supra. The Tort Claims Act contains no such provision and does not necessarily imply that a nonsettling joint tortfeasor remains liable for his percentage of negligence. To the contrary, the act expressly requires a pro tanto reduction for any payment made by an alleged joint tortfeasor, N.J.S.A. 59:9-3, and the Comparative Negligence Law contains no comparable provision. While this rule may be inconsistent with the principles of comparative negligence adopted by N.J.S.A. 59:9-4, the more specific legislation of N.J.S.A. 59:9-3 controls and requires a pro tanto reduction. See State, by Highway Comm'r v. Dilley, 48 N.J. 383, 387 (1967); Graziano v. Montville Tp., 162 N.J. Super. 552, 564 (App. Div. 1978), certif. den. 79 N.J. 462 (1978).
The comment to N.J.S.A. 59:9-3 states that the pro tanto rule was adopted to avoid the sometimes harsh result created by the pro rata rule of Theobold v. Angelos, 40 N.J. 295 (1963), aff'd after remand 44 N.J. 228 (1965), when a plaintiff settled for an amount less than the settling party's pro rata share. This purpose does not apply when, as in this case, a plaintiff receives in settlement an amount in excess of the settling party's pro rata share, and arguably N.J.S.A. 59:9-3 should be construed not to apply to those cases. However, the statute is clear and *37 unambiguous in its mandate. In the absence of some ambiguity this court may not construe the statute to exclude a case clearly within its scope. See Gangemi v. Berry, 25 N.J. 1, 10 (1957); Imbriacco v. Civil Serv. Comm'n, 150 N.J. Super. 105, 109 (App. Div. 1977). There are sound reasons of public policy for denying a plaintiff recovery in excess of his actual damages at the expense of the public. See, also, Cancel v. Watson, 131 N.J. Super. 320, 324-325 (Law Div. 1974)[2].
We conclude that the trial judge properly applied N.J.S.A. 59:9-3 in molding the verdicts.

III. Damages
Plaintiffs Christopher Law and Darryl Berger moved for a new trial arguing that the damages awarded them were so grossly inadequate as to result in a miscarriage of justice and warrant a new trial on damages. R. 4:49-1. The trial judge denied their motion and plaintiffs renew their argument on appeal.
The test to be applied by this court in reviewing a trial judge's denial of a motion for a new trial because of an inadequate award of damages is well settled. R. 4:49-1(a) provides that a trial judge shall grant a motion for a new trial to all or any of the parties on any issue when "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." The standard to be applied under this rule by the trial judges, and by this court on appeal, is the same.
... [A] trial judge should not interfere with the quantum of damages assessed by a jury unless it is so disproportionate to the injury and resulting disability shown as to shock his conscience and to convince him that to sustain *38 the award would be manifestly unjust. [Baxter v. Fairmont Food Co., 74 N.J. 588, 596 (1977)]
See, also, Sweeney v. Pruyne, 67 N.J. 314, 315 (1975); Dolson v. Anastasia, 55 N.J. 2, 7 (1969). But a court should not hesitate to modify a verdict which is unsupported by credible evidence, overlooks or underevaluates crucial evidence, see State v. Johnson, 42 N.J. 146, 162 (1964), or otherwise shocks the conscience. See Taweel v. Starn's Supermarket, 58 N.J. 227, 236 (1971); Trentacost v. Brussel, 164 N.J. Super. 9, 18 (App.Div. 1978), aff'd 82 N.J. 214 (1980). Moreover, while the factfinder's "feel of the case" should be respected by an appellate court, this limiting factor is less compelling when the record is extensive and the plaintiff's proofs are largely uncontradicted. Baxter v. Fairmont Food Co., supra 74 N.J. at 600.
An examination of the proofs adduced on the injuries and damages sustained reveals the following. Darryl Berger was severely injured when the truck ran over his lower abdomen, fracturing his pelvis. He sustained multiple fractures of the left and right inferior and superior pubic rami and injuries to his bladder which caused distension and an inability to pass urine, as well as extensive internal bleeding. He remained in the hospital for one month and remains under treatment for his injuries. Physicians for both plaintiff and defendant testified he was recovering well. Darryl did not testify at trial though his deposition was read and indicated he suffered no continuing problems and encountered no difficulty or pain in urinating. He now suffers primarily from a permanent scarring of the urethra which must be dilated regularly and may impair his future urinary and procreative functions. At the time of trial Darryl's medical expenses totaled more than $18,000 and his prognosis called for continuing treatment. Applying the test set out above we conclude that the award of $70,000 is supported by the evidence and not so disproportionate to Darryl's injuries as to shock the conscience. Additionally, as noted above, $36,900 was awarded to Levada Berger.
Christopher Law's right leg was run over and severely lacerated. After the accident Christopher was carried to his *39 nearby home and later taken by ambulance to Martland Hospital where he remained for 31 days. The laceration, which extended from knee to ankle and exposed underlying bone and muscle was cleaned, closed and initially covered with pigskin grafts. Sixteen days later the treating physicians took a skin graft from Christopher's left thigh to permanently close the wound. This graft left Christopher's right leg permanently scarred, and the evidence indicates these scars may open and bleed even in minor trauma. In addition, Christopher will suffer some pain during strenuous activity and as a result of weather changes. The cost of Christopher's hospital and nursing care amounted to $4,427.67.
The evidence of Christopher's injuries was uncontradicted and, notwithstanding the award to Christopher's mother of $4,700 for medical expenses, we conclude the award of $1,500 to Christopher is clearly inadequate and constitutes an injustice. We deem it inappropriate in this case to order an additur, Baxter v. Fairmont Food Co., supra at 602-603; Bitting v. Willett, 47 N.J. 6, 9 (1966), and, at oral argument, defendant expressly disclaimed any desire for a trial on liability should we conclude the damages were inadequate and reverse.
The judgment entered for the Board of Education notwithstanding the verdict is reversed.
The judgments entered molding the verdicts entered on behalf of Levada Berger and Anita Law, so as to bar any recovery on their behalf because they had received a sum in settlement in excess of the jury award of damages to them, is affirmed.
The judgment entered molding the verdict entered on behalf of Darryl Berger reducing it by the amount received in settlement to the amount of $41,900 is affirmed.
The judgment entered on the verdict of Christopher Law is reversed and his claim is remanded for a new trial, limited to the issue of damages.
Jurisdiction is not retained.
NOTES
[1] Seagraves, the manufacturer of the fire truck, was a named defendant but was not involved in the trial and is not a party to this appeal.
[2] Plaintiffs also argue that the Supreme Court in Kotzian v. Barr, 81 N.J. 360, 365, n. 2 (1979), recognized the applicability of N.J.S.A. 2A:15-5.3 and, by implication, N.J.S.A. 59:9-4 in determining the liability of a public entity as a joint tortfeasor. However, this issue was not presented in that case and we construe the footnote as merely a statement of the general effect of the adoption of comparative negligence in this State rather than a definitive resolution of the issue presented here.