195 N.J. Super. 507 (1984)
480 A.2d 934
DONNA LONGO, LAURA LONGO AND DOMINIC J. LONGO, INDIVIDUALLY, AND IN THEIR OWN RIGHT, AS PARENTS, PLAINTIFFS-APPELLANTS,
v.
FRANK SANTORO, A MINOR WHEN THE CAUSE OF ACTION ACCRUED, AND HELEN SANTORO AND SALVATORE SANTORO, AS PARENTS OF FRANK SANTORO, HENRY R. GILBERT, PRINCIPAL OF AUDUBON BOROUGH HIGH SCHOOL; AND BOARD OF EDUCATION, BOROUGH OF AUDUBON, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1984.
Decided August 8, 1984.
*510 Before Judges ANTELL, JOELSON and McELROY.
Michael S. Berger argued the cause for appellants (Nathan A. Friedman, attorney; Michael S. Berger on the brief).
K. Ruth Larson argued the cause for respondents Gilbert and Board of Education (Bernadette A. Duncan, attorney; R. Barry Stronsnider on the brief).
The decision of the court was delivered by McELROY, J.A.D.
This appeal requires consideration of N.J.S.A. 59:3-2d, a subsection of the New Jersey Tort Claims Act which provides that a public employee "is not liable for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources, including those allocated for ... personnel unless a court concludes that the determination of the public employee was palpably unreasonable." The act further states that "[n]othing in this section shall exonerate a public employee for negligence arising out of his acts or omissions in carrying out his ministerial functions."
On Tuesday, January 1, 1976, plaintiff Laura Longo was thirteen years old and an eighth grade student at the Audubon Borough Junior/Senior High School. During the lunch period she was standing in a group of girls on an athletic field adjacent to the school and was struck in the face by a rock thrown by Frank Santoro, a seventh grade student, who was throwing rocks at a basketball backboard located near the girls. She and her father sued defendant Gilbert, principal of the school alleging he failed to provide proper supervision of the lunch hour activities of the students. We will refer to plaintiffs in the singular. The Board of Education was sued respondeat *511 superior as Gilbert's employer.[1] Plaintiff appeals a judgment of dismissal entered in favor of Gilbert and the Board by the trial judge after submission of all the evidence. The judge determined that Gilbert was statutorily immune under N.J.S.A. 59:3-2d and consequently his conduct was not imputable to the Board. We reverse and remand for a new trial.
The school had an enrollment of approximately 1,300 students. It operated under a Board instituted "open lunch" policy by which the students were free to eat lunch in the school cafeteria, at home or at local restaurants or stores in the neighborhood of the school.[2] There were two lunch periods of 45 minutes each commencing at 11:45 a.m. As might be expected, during these periods a number of students would be in and around the area of the school buildings, adjacent playing fields, sidewalks and parking lot. There were no scheduled school activities during this time. Gilbert had, however, assigned certain of the teaching staff and his assistant principal, James Held, to the cafeteria to patrol outside the buildings in order to exercise supervision over the students. Gilbert testified that those assigned outside were charged with the duty to "supervise the students that were in the immediate area of the building." They were to walk around the area and try to prevent "problems." There was no standing instruction that a teacher had to be in the ballfield area on a daily routine basis. Teachers were instructed either to go to that field or observe it from the school area across the street.
*512 Three teachers maintained order in the cafeteria. Either two or three of Gilbert's staff usually patrolled the exterior areas.[3] Held was one of these but he was not available on Tuesdays for this duty because he customarily attended a Rotary Club function during the first lunch period on that day. There was no policy set by Gilbert to replace Held on Tuesdays. He stated that he instructed the teachers in the cafeteria "that as soon as the students began to leave ... they should work their way outside as well. In other words, as the number of students in the cafeteria decreased, a teacher or two should move outside with them." Gilbert testified that sometimes he would take over Held's duty on Tuesdays. On the day of the accident he was "tied up" and could not do so.
Gilbert explained that he was limited as to the number of teachers available for lunch time duty because the union contract limited teachers to one duty period a day. Under the contract a teacher's schedule consisted of eight periods in a school day, five teaching periods, lunch period, a preparation period and a duty period. A teacher's duty period might fall within "one of any of the eight periods." He testified that during the two lunch periods (periods four and five), "I had a very small number of teachers available to cover the halls, the inside, as well as the outside. I simply did not have enough teachers available." A teacher could only be assigned to one duty period per day. He did not state whether Held had a duty period, why it was necessary for Held to be excused to attend *513 the Rotary meeting and whether Held's daily patrol was part of his normal allotted lunch hour.
There was no teacher in the area where plaintiff sustained her injury. The accident was brought to the attention of school authorities when plaintiff was brought to the school nurse by her friends. Dawn Hudson, one of the group in which plaintiff was standing, testified she observed no boy other than Santoro throwing rocks. No other boys were near him. She saw him throw "over five" rocks in a five minute period, the last injuring plaintiff. Santoro denied he threw the stone that injured plaintiff. He stated he and a group of two or three boys had thrown stones at the basketball backboard for five or ten minutes. He admitted he had thrown rocks at the basketball backboard at other times and had seen other students do so as well.
Plaintiff stated she was standing with her friends and did not see who threw the rock that injured her. Neither she nor Dawn recalled seeing any teachers in the area. When Santoro started to throw rocks plaintiff's group moved away from the area in which stones were landing. As she and the girls were talking one of them said, "look out;" plaintiff turned and was struck in the face.
Gilbert testified he had been principal of the school since 1972. He was aware students congregated at the ballfield and other adjacent outside areas during lunch period. From 1972 to 1976 he estimated there were three to four "fights" a month among students. There were also complaints by neighboring householders about lunch time litter and about students on their lawns. Sometimes words were exchanged between such adults and students. During the winter students would have snowball fights when the snow was suitable for such purpose. From 1972 to the date of plaintiff's injury there had been only one rock throwing incident. The nature of this incident was not developed. It occurred after school hours.
*514 This case was bifurcated and was tried on the issue of the liability of the defendants. At the conclusion of the evidence counsel for Gilbert and the school board moved for judgment and the motion was granted. Despite plaintiff's contention that ordinary negligence principles governed the case, the judge concluded that the "palpably unreasonable" standard of N.J.S.A. 59:3-2d was the standard by which Gilbert's acts or omissions were to be weighed. Relying on the definition of that statutory term given in Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App.Div. 1979), the judge concluded that more than ordinary negligence had to be shown and the test was whether Gilbert's action or failure to act was "capricious, arbitrary, whimsical or outrageous." Ibid. He concluded Gilbert and the Board, as his employer, were not liable and the minds of reasonable men could not differ on this question. He also determined that even if ordinary negligence were considered, Gilbert's failure to replace Held was not demonstrated to be a proximate cause of plaintiff's accident or injury.
It is plaintiff's position that Gilbert had a duty to supervise students during the operation of "open lunch" periods and the decisions he made in furthering the open lunch policy were "the type of mundane, routine ones which are not entitled the `discretionary functions' immunity under the Tort Claims Act." Relying principally on Law v. Newark Bd. of Ed., 175 N.J. Super. 26 (App.Div. 1980), Sutphen v. Benthian, 165 N.J. Super. 79 (App.Div. 1979), Flodmand v. Institutions & Agencies Dep't., 175 N.J. Super. 503 (App.Div. 1980) and the decision in Costa v. Josey, 83 N.J. 49 (1980), plaintiff broadly asserts that "the types of decisions involved in supervision of school children are routine decisions and not discretionary functions and accordingly the type of analysis engaged in by the trial court ... was wholly irrelevant."
Claims against public entities and public employees are governed by N.J.S.A. 59:1-1 et seq. Where immunity is claimed by a public entity based upon discretionary activities *515 N.J.S.A. 59:2-3 applies. When immunity is, as here, sought by a public employee N.J.S.A. 59:3-2 governs. Both of these enactments contain the same language and although N.J.S.A. 59:3-2 has not heretofore been interpreted, N.J.S.A. 59:2-3 has received judicial review and construction. See e.g., Costa v. Josey, supra, and Brown v. Brown, 86 N.J. 565 (1981). Because both sections are similar and have the same general purposes it follows that the interpretations of N.J.S.A. 59:2-3 apply equally to N.J.S.A. 59:3-2. N.J.S.A. 59:3-2 serves to illustrate the nature of both sections, it provides:
a. A public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him;
b. A public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;
c. A public employee is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services;
d. A public employee is not liable for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public employee was palpably unreasonable.
Nothing in this section shall exonerate a public employee for negligence arising out of his acts or omissions in carrying out his ministerial functions.
Subsection a of N.J.S.A. 59:2-3 has been interpreted as only granting immunity where the asserted discretionary decisions are "actual, high-level policymaking decisions" or "basic policy determinations." Costa, 83 N.J. at 54-55. Costa defines a basic policy decision as "the type made at the planning, rather than the operational level of decision making. Moreover, immunity is contingent upon proof that discretion was actually exercised at that level by an official who, faced with alternative approaches, weighed the competing policy considerations and made a conscious choice." Id. at 59.
Plaintiff in this case seizes upon this language and asserts that Costa is dispositive of this matter and characterizes Gilbert's decisions as to how to utilize his administrative and *516 teaching staff to supervise students during the open lunch periods as decisions not made at high or basic policy levels but at the operational level. Indeed, plaintiff classifies Gilbert's determinations as "mundane," and "routine." This argument fails because we are not here concerned with subsection a, as was the Court in Costa. Rather, we must address subsection d which grants immunity to a public employee "for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources including those allocated for ... personnel." This is a qualified grant of immunity dependent upon whether the employee's determination can be viewed as "palpably unreasonable."
Brown v. Brown, supra, is instructive as to the distinction between a claim of immunity under subsection d and one under subsection a. Brown was a "competing demands" case brought against a public entity. The plaintiffs were injured by a dangerous condition of state Route 9 where water was permitted to accumulate at a curve in the roadway. The Department of Transportation was on actual notice of this hazard and intended to correct that condition. The decision as to when such action was to be taken was entrusted to the department's supervising engineer who made up a list of 23 projects and scheduled the Route 9 correction as number 17 on the list. Unfortunately, the project was not undertaken until after plaintiffs' accident. When sued, the State claimed immunity under N.J.S.A. 59:2-3, a and d. The Court rejected the claim of immunity under subsection a as one not falling within the Costa interpretation of that subsection's exemption because the discretion used was not one involving "basic policy  the type made at planning, rather than the operational level of decisionmaking." Brown, 86 N.J. at 577. It held the State liable under subsection d because its failure to timely act in timely manner was palpably unreasonable. In so doing it stated:

*517 The State vehemently argues that the project involved design engineering rather than maintenance. Even if that position were adopted, the State's reliance on subsection a would be misplaced. When an immunity comes within a specific subsection of N.J.S.A. 59:2-3, then the general provision, subsection a, would not apply. See W. Kingsley v. Wes Outdoor Advertising Co., 55 N.J. 336, 339 (1970); State by Highway Com'r v. Dilley, 48 N.J. 383, 387 (1967); State v. Hotel Bar Foods, 18 N.J. 115, 128 [112 A.2d 726] (1955). Here the State's showing falls well within the factual confines of subsection d. The State has agreed that the road condition was dangerous, that the highway was under its control, that it was aware of the precarious situation, and that it intended to take corrective measures. Its defense has been that it was confronted with competing demands for other projects which had been accorded priority. The State does not contend that it did not have the necessary equipment or the qualified manpower to do the job. Under these circumstances subsection d is brought into play and subsection a would be inapplicable. No implication should be drawn that if subsection d did not apply, immunity would automatically be available under subsection a. Questions of a different nature would then become pertinent. See Costa v. Josey, 83 N.J. 49 [415 A.2d 337] (1980).
Applicability of subsection d, namely, the State's exercise of discretion with respect to when it would proceed, does not per se establish immunity, for immunity is not available if `a court concludes that the determination of the public entity was palpably unreasonable.' The record substantially justifies the jury's conclusion that the determination was `palpably unreasonable.' Decision-making as between and among authorized projects was apparently left to the Supervising Engineer in the geographical area involved. Though this project was transmitted to him in August 1974, he did not consider its urgency or evaluate the extent and nature of the work. It was simply added to the list. In May 1975, he reviewed 23 projects and placed this as number 17 on the list. It was the State's burden to demonstrate that the items given a higher priority were more critical. See Williams v. Phillipsburg, 171 N.J. Super. 278 (App. Div. 1979). No satisfactory explanation was forthcoming for the low priority given to this item in relation to those placed ahead of it. In this respect the State did not show that its action was not palpably unreasonable. [86 N.J. at 577-579].
In Brown the Court made a clear distinction between subsection a and d. It held:
Subsections b, c and d relate to specific circumstances. Under subsection b, immunity is given for legislative, administrative or judicial action or inaction. Subsection c is concerned, as noted above, with the exercise of discretion in determining whether to provide the resources necessary for certain purposes. Subsection d involves the exercise of discretion when in the face of competing demands, the governmental body determines whether and how to utilize existing resources.
In sharp contrast subsection a is set forth in general terms, immunizing a public entity for injury resulting from the exercise of judgment or discretion. We recently reviewed this provision in Costa v. Josey, 83 N.J. 49 (1980) and, *518 after analyzing both the California (Cal. Gov't Code § 820.2) and the federal (28 U.S.C.A. § 2680(a)) statutes as expounded by pertinent judicial decision, concluded that the exemption under subsection a concerns the "exercise of judgment or discretion" in making basic policy  the type made at the planning, rather than the operational, level of decisionmaking. 83 N.J. at 59 [Id., 86 N.J. at 577].
Brown makes clear that a discretionary decision of a public entity under subsection d of N.J.S.A. 59:2-3 and, necessarily, one made by a public employee under subsection d of N.J.S.A. 59:3-2 need not be one made at the high level required under subsection a. Accordingly, we hold that discretionary operational or less than high-level planning decisions made by a public employee charged with a duty to exercise more than a ministerial function may be granted immunity. However, it must be demonstrated that the employee's decision was made "in the face of competing demands," involved "whether or how to utilize or apply existing resources including those allocated [to him] for personnel," and his determination was not "palpably unreasonable." The decisions here made by Gilbert were of the required quality.
Our point of departure from the decision of the trial judge is that we cannot say, on the evidence presented, that Gilbert's decisions were not palpably unreasonable as a matter of law. Brown holds that the burden of proof as to the reasonableness of a public entity's conduct rests with that entity. Id., at 578-579. The position of a public employee who seeks immunity under subsection d of N.J.S.A. 59:3-2 can be no greater. Moreover, the imposition of the burden of proof upon a public employee is statutorily more justifiable. A public entity, is deemed "not liable for an injury" except as otherwise provided by the New Jersey Tort Claims Act. N.J.S.A. 59:2-1. (Emphasis ours). On the other hand, a public employee, "[e]xcept as provided by [the New Jersey Tort Claims Act] is liable for injury caused by his act or omission to the same extent as a private person." N.J.S.A. 59:3-1. (Emphasis ours). We regard the statutory distinction made by these enactments as evincing an intent to place the burden on the public employee to demonstrate his actions or failure to act were not palpably unreasonable.
*519 Gilbert's proofs on that issue were meager and were dependent in large measure upon his bare conclusionary assertion that he had insufficient staff to cover the areas to be supervised on Tuesdays when Held was absent. He made no attempt to demonstrate the actual number of his employees and where each was actually scheduled to be during the lunch periods. No attempt was made to explain why it was necessary to grant Held leave to attend an outside function on Tuesday; whether for example, the period in question was actually Held's normal lunch hour during which he ordinarily sacrificed all or part of his personal time to cover the outside areas; why it was necessary for three teachers to be in the cafeteria as opposed to the use of two outside on Tuesdays when Held was away; whether a teacher with the duty to patrol the halls could have been assigned outside; in what manner Gilbert was "tied up" and unable to replace Held, and whether it was reasonably possible to restrict some of the outside school areas to student use.
Absent such proofs or those of similar nature demonstrating the reasonableness of Gilbert's conduct we can see no basis for a judicial determination that Gilbert's decisions were, as a matter of law, of that quality. Gilbert's bare conclusions are not enough to carry the burden of proof as to the standard of palpably unreasonable conduct set forth in Williams v. Phillipsburg, supra, 171 N.J. Super. at 286.
Accordingly, we reverse the judgment for defendants and remand the matter for a new trial. All other arguments raised by plaintiff are rejected as lacking merit. We observe that the cases of Law v. Newark Bd. of Ed.; Flodmand v. Institutions & Agencies Dep't. and Sutphen v. Benthian referred to earlier in this opinion and relied upon by plaintiff are inapposite. Those cases did not involve the "competing demands" immunity provided by N.J.S.A. 59:3-2d. The public policy argument raised in plaintiff's point three is rejected as frivolous. The standards governing a public school principal's *520 duty toward students placed in his charge is, as a matter of public policy, prescribed by the Legislature in the New Jersey Tort Claims Act. Plaintiff does not dispute that Gilbert is a public employee within the meaning of that act. See, N.J.S.A. 59:1-3.
Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.
NOTES
[1] Suit was also brought against Santoro and his parents. The case against the parents was voluntarily dismissed before trial began. The case against the boy was settled while it was being considered by the jury.
[2] Plaintiff raised no challenge to the Board's decision to have an "open lunch" policy. Plaintiff conceded that this plan involved "a high level of decision" protected by the New Jersey Tort Claims Act. N.J.S.A. 59:2-3a. The cause of action against the Board was, as noted above, founded solely upon an imputed, vicarious liability. It can only be liable if Gilbert is liable. N.J.S.A. 59:2-2b.
[3] Gilbert testified at trial that there were three teachers patrolling outside, Held, Mr. Klink and a female teacher whose name he could not recall. She covered the parking lot area behind building A. His deposition, read at trial, indicated only Held and Klink worked outside. He testified at trial that this was an error brought about by his misunderstanding of the question asked at his deposition. He thought the question only pertained to staff members assigned to patrol the Edgewood Avenue area bordering the school. The ballfield in which plaintiff stood when she was injured was across from the school on Edgewood Avenue.