224 N.J. Super. 303 (1988)
540 A.2d 239
MICHAEL MURRAY, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
KARI S. NICOL AND EDWARD NICOL, DEFENDANTS-RESPONDENTS/CROSS-APPELLANTS, AND THE TOWNSHIP OF UNION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1988.
Decided April 7, 1988.
*305 Before Judges DREIER and BAIME.
Daniel G. Larkins argued the cause for appellant/cross-respondent (Goldberger & Finn, attorneys; Daniel G. Larkins on the brief).
Paul A. Spina, Jr., argued the cause for respondents/cross-appellants (McDermott, McGee & Ruprecht, attorneys; Paul A. Spina, Jr. on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal and cross-appeal present questions of first impression. At issue is whether N.J.S.A. 59:9-3b, which mandates that in any case involving a public entity a settlement by one joint tortfeasor must be deducted pro tanto from a judgment against another joint tortfeasor, is applicable where the non-settling party is a private person.[1] Ancillary questions *306 concern the applicability of N.J.S.A. 59:9-2e, which abrogates the common law collateral source rule in connection with an award obtained from a public entity or employee. Other issues relate to the trial court's order, barring the presentation of a defense witness because his name did not appear in answers to interrogatories.
The salient facts are not in dispute. Plaintiff instituted this action to recover damages for injuries sustained when the motor vehicle he was driving was struck by another operated by defendant Kari D. Nicol. The collision occurred at an intersection. Plaintiff's line of traffic was controlled by a stop sign which was obscured by a tree and other foliage planted and maintained by defendant Township of Union. In his complaint, plaintiff alleged that the concurrent negligence of Nicol and the Township constituted proximate causes of his injuries.
The accident occurred in the course of plaintiff's employment and he thus received substantial workers' compensation benefits. Prior to trial, plaintiff settled with the Township in the amount of $20,000. The jury ultimately returned a verdict in plaintiff's favor in the sum of $55,000. In its verdict, the jury ascribed fault in the following manner:
Defendant Nicol 20%
Defendant Township of Union 70%
Plaintiff 10%
Immediately following the jury's determination, the trial court molded the verdict by first reducing the amount of the award by ten percent, which represented plaintiff's contributory negligence, and then deducting the amount of the settlement from the remainder. Defendant Nicol thereafter moved for reconsideration, arguing that a pro tanto reduction is mandated by N.J.S.A. 59:9-3b only where the public entity is the non-settling party. The trial court agreed. Relying primarily on the fact that N.J.S.A. 59:9-3b is entitled "Contribution by a public entity or public employee with a joint tortfeasor," the court determined that the statute was applicable only in cases in which the public entity is the non-settling party against *307 whom the judgment is entered. Where, as here, the settling party is the public entity, the court found no reason to deviate from the prescription of the Comparative Negligence Law (N.J.S.A. 2A:15-5.1) which directs that when a claimant settles with a codefendant, that percentage of negligence found attributable to the settling codefendant is to be deducted from the verdict returned against the non-settling defendants. So posited, the court molded the verdict, deducting from the damages the amount represented by plaintiff's contributory negligence, and reducing this sum by 70%, the percentage of fault allocated to the Township. Judgment against Nicol was entered in the amount of $11,000 plus prejudgment interest.

I.
In the principal appeal, plaintiff asserts that the trial court incorrectly narrowed the reach of the statutory prescription embracing the pro tanto rule, contrary to the clearly expressed intent of the Legislature. It is argued that the legislative objective was to accord an injured party the benefit of his bargain with the settling tortfeasor and encourage amicable adjustment of claims through settlements. We agree.
The pro tanto rule is set forth in N.J.S.A. 59:9-3b, a part of the New Jersey Tort Claims Act (N.J.S.A. 59:9-1 et seq.). The statute provides in pertinent part that "[a]ny payment received by the injured party on account of a settlement or a judgment paid by an alleged tortfeasor shall be reduced pro tanto from the injured party's judgment against any other tortfeasor."[2]N.J.S.A. 59:9-3b. (Emphasis added). By its very terms, the statute mandates that the pro tanto rule applies whenever there is a settlement irrespective of whether the settling party is a public entity or private person. Simply stated, the statute *308 draws no distinction in that regard. Suffice it to say, we are not at liberty to interpret the statutory language contrary to its plain meaning.
Prior to adoption of the Comparative Negligence Law (N.J.S.A. 2A:15-5.1 et seq.), our cases provided that if an injured party settled with a joint tortfeasor below his pro rata share, he assumed the loss and did not receive his full judgment. See Theobold v. Angelos, 40 N.J. 295, 302 (1963); Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 93-94 (1954). The adoption of the Comparative Negligence Law altered the relationship between joint tortfeasors. Under N.J.S.A. 2A:15-5.2 and -5.3, joint tortfeasors no longer share on a pro rata basis, but rather on the allocation of negligence assigned by the finder of fact. The intent of the Comparative Negligence Law is not only to accord a fairer result to moderately negligent claimants, but also to provide fairer justice to joint tortfeasors by calling upon them to contribute to the award in proportion to their own actual degree of fault. See Lee's Hawaiian Islanders, Inc. v. Safety First Prod., 195 N.J. Super. 493, 505 (App. Div. 1984), certif. den. 99 N.J. 205 (1984).
In Rogers v. Spady, 147 N.J. Super. 274 (App.Div. 1977), we construed N.J.S.A. 2A:15-5.2 and -5.3 as requiring that when a plaintiff settles with a codefendant, the non-settling joint tortfeasors remain liable for the percentage of negligence attributable to them. Id. at 277-278. We acknowledged that the recovering party may obtain the full amount of the molded verdict from any of the responsible parties, but that party could in turn seek contribution from the other joint tortfeasors to the extent its payment exceeded its percentage share. Ibid. In that respect, we recited N.J.S.A. 2A:15-5.3, which provides that "[a]ny party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors." See also Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 569 (1980).
*309 N.J.S.A. 59:9-4, the counterpart of N.J.S.A. 2A:15-5.2, incorporates many of the principles of comparative negligence into the Tort Claims Act. That section provides:
Contributory negligence shall not bar recovery in an action by any party or his legal representative to recover damages to the extent permitted under this act if such negligence was not greater than the negligence of the party against whom recovery is sought, but any damages sustained shall be diminished by the percentage of negligence attributable to the person recovering. In all negligence actions in which the question of liability is in dispute, the trier of fact shall make the following as findings of fact:
a. The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence, that is, the full value of the injured party's damages to the extent permitted under this act.
b. The extent, in the form of a percentage, of each party's negligence. The percentage of negligence of each party shall be based on 100% and the total of all percentages of negligence of all the parties to a suit shall be 100%.
c. The judge shall mold the judgment from the findings of fact made by the trier of fact in accordance with the provisions of this act.
Conspicuous in its absence is any provision similar to N.J.S.A. 2A:15-5.3, stating expressly or implying that a non-settling joint tortfeasor remains liable for his percentage of negligence. To the contrary, N.J.S.A. 59:9-3b expressly requires a pro tanto reduction for any payment made by an alleged joint tortfeasor. As we pointed out in Law v. Newark Bd. of Ed., 175 N.J. Super. 26 (App.Div. 1980), "this rule may be inconsistent with the principles of comparative negligence adopted by N.J.S.A. 59:9-4," but it is nonetheless clear that "the more specific legislation of N.J.S.A. 59:9-3 controls and requires a pro tanto reduction." Id. at 36.
We note that our construction of the statute is bolstered by the comments annexed to this section of the Tort Claims Act. Such statements and comments may be considered in determining legislative intent. See Law v. Newark Bd. of Ed., supra, 175 N.J. Super. at 35; Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152, 178-181 (Ch.Div. 1976), aff'd 156 N.J. Super. 513 (App.Div. 1978); Polyard v. Terry, 148 N.J. Super. 202, 207 (Law Div. 1977), rev'd on other grounds, 160 N.J. Super. 497 (App.Div. 1978), aff'd 79 N.J. 547 (1979); Caldwell v. Township of Rochelle Park, 135 N.J. Super. 66, 74 (Law *310 Div. 1975). The comment explains the statutory purpose in the following terms:
Subparagraph (b) mandates that any settlement by a joint-tortfeasor in a suit involving a public entity or public employee shall be deducted pro tanto from any judgment against another joint tortfeasor. This provision changes the existing law which provides that when a joint tortfeasor settles with a claimant there will be a pro rata reduction of the judgment against the remaining tortfeasors. In other words, the plaintiff does not now recover the full amount of his judgment if he settles with a joint tortfeasor below his pro rata share of the judgment (to the extent of the difference).
The above provision would rectify this inequity and permit a plaintiff to recover from any non-settling tortfeasor the difference between the total amount of his judgment and the amount of any settlement he may have reached. In addition to more fairly and fully compensating an injured plaintiff, this provision will undoubtedly encourage settlements by all parties.
According to the comment, the pro tanto principle was designed to ameliorate the sometimes harsh result created by the pro rata rule of Theobold v. Angelos, supra, and has continued efficacy within the context of comparative negligence principles. Where, as here, the injured party makes a particularly poor bargain, because the settlement amount is less than that which could have been recovered against the settling party by virtue of the percentage of negligence found attributable to it, he is obviously benefited by application of the pro tanto rule. In the converse situation, where the settlement amount is in excess of the settling party's percentage share, the plaintiff loses the potential for enrichment beyond the loss actually suffered. In that context, however, there are sound reasons of public policy for denying a plaintiff recovery in excess of his actual damages at the expense of the taxpayer where the public entity is the non-settling party. Where a private person is the non-settling party, the plaintiff nevertheless benefits because he has received the benefit of his bargain. In other words, the potential for enrichment beyond the loss suffered is offset by the potential for a greater loss if he makes a low settlement. In this respect, the Legislature sought to accommodate the competing interests involved. Whatever personal reservations we might harbor concerning the fairness and wisdom of the *311 statute, we are obliged to enforce and apply the legislative will.[3]
Were we to construe the statute in accordance with defendant's argument, an injured party would be loath to enter into a settlement with a public entity or, at the very least, would harbor strong motivation to assume a strident bargaining position. In the event the settlement with the public entity proved less than its percentage of fault, the plaintiff would lose the difference. No similar constraint would tend to discourage a settlement with a private party, since, under the pro tanto rule, the low settlement amount would simply be deducted from the judgment entered against the public entity. In short, we are of the view that defendant's interpretation of the statute would tend to subvert the legislative purpose.
We recognize that the title of N.J.S.A. 59:9-3 refers only to contribution by a public entity. Although the trial court placed heavy reliance on the statutory title, we find this to be less than compelling. To paraphrase Judge Jayne, a title to a statute is very much like the inscription on a tombstone. It serves only to indicate what lies below. State v. Greene, 33 N.J. Super. 497, 500 (App.Div. 1955). While a title can cast some light upon the purpose of legislation, it cannot be used to expand or enlarge upon the plain meaning of the language employed. See, e.g., Gabin v. Skyline Cabana Club, 54 N.J. 550, 554-557 (1969); Howard Savings Inst. v. Kielb, 38 N.J. 186, 201 (1962); City of Atlantic City v. County of Atlantic, 193 N.J. Super. 583, 586 (App.Div. 1984); Swede v. City of Clifton, 39 N.J. Super. 366, 377-378 (App.Div. 1956), aff'd 22 N.J. 303 (1956).
*312 Here, the statute is clear and unambiguous. We may not construe it to exclude a case clearly within its scope. We thus hold that the pro tanto rule embodied in N.J.S.A. 59:9-3b is applicable whether or not the public entity is the settling party.

II.
We find no merit in defendant's alternative argument that if the statute is applicable, the judgment debtor must receive the benefit of the deductions as prescribed by N.J.S.A. 59:9-2e. That section provides:
If a claimant receives or is entitled to receive benefits for the injuries allegedly incurred from a policy or policies of insurance or any other source other than a joint tortfeasor, such benefits shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award against a public entity or public employee recovered by such claimant; provided, however, that nothing in this provision shall be construed to limit the rights of a beneficiary under a life insurance policy. No insurer or other person shall be entitled to bring an action under a subrogation provision in an insurance contract against a public entity or public employee. [Emphasis added].
It is abundantly clear that to the extent N.J.S.A. 59:9-2e abrogates the collateral source rule, it is applicable only with respect to an "award against a public entity." See Margolis and Novack, Tort Claims Against Public Entities (1986), at 120. This section must be read in conjunction with N.J.S.A. 59:9-3a, which makes it clear that in situations where a public entity or public employee is a joint tortfeasor and hence jointly and severally liable with another joint tortfeasor to the injured party (but see N.J.S.A. 59:9-3.1 which was adopted in 1987), the public entity's or public employee's liability and duty of contribution only extends to the damages provided under the Act. See Margolis and Novack, Tort Claims Against Public Entities, supra, at 121. The statutory scheme was plainly designed to confer benefits on public entities that are not to be accorded private parties. Here, however, there was no award against the public entity. The Township settled with plaintiff and has claimed no offset under the statute for collateral benefits.
*313 Equally unavailing is defendant's argument that the distinction between public entities and private parties and the unequal treatment predicated on this division constitute a denial of equal protection and due process. This issue was addressed by our Supreme Court in Rivera v. Gerner, 89 N.J. 526 (1982), albeit in a somewhat different context. There, the question concerned the applicability of N.J.S.A. 59:9-2d, which provides credits to a public entity and places limitations on damages for pain and suffering. As applied in that case, the defendant, a private party, whose negligence was found to be 15%, was forced to pay 70% of the judgment. While the Court acknowledged that the events imposed a "disproportionate burden" on the defendant, no constitutional deprivation was found. Id. at 535.
In a similar vein, we perceive no violation of due process or equal protection here. The exposure of public entities to a myriad of claims constitutes a compelling reason to treat them differently from private parties. Whatever unfairness results is outweighed by the public policy concerns sought to be vindicated.

III.
We find no merit in the contention advanced by defendant in her cross-appeal. At trial, defendant sought to present a witness whose name did not appear in answers to plaintiff's interrogatories. Although the individual's name was set forth in the police report, plaintiff claimed that he was prejudiced because he did not know defendant intended to call him as a witness. Following a lengthy colloquy, the trial court determined that defendant's failure to comply with applicable discovery rules precluded her from presenting the witness. According to the court, prejudice that would otherwise flow to plaintiff could not be obviated by a continuance. The court, therefore, barred defendant from presenting the witness. Defendant now argues that the court abused its discretion.
*314 We thus come to an old topic. At issue is the extent to which the failure to abide by our discovery rules is permitted to impact on the right of the litigants to a fair day in court. Only recently, we reiterated the well recognized notion that "there is a general disinclination to invoke the sanction of exclusion  especially where [a litigant's] entire case thereby stands or falls  when remedies having a lesser tendency to affect the merits are at hand." Wilkins v. Hudson County Jail, 217 N.J. Super. 39, 45 (App.Div. 1987), certif. den. 109 N.J. 520 (1987). In a plethora of decisions, we have emphasized that the sanction of exclusion of testimony is to be exercised cautiously and only after the court has exhausted all means of performing its shepherding function which do not terminate or deeply affect the outcome of a case. See Johnson v. Mountainside Hosp., Resp. Disease Associates, 199 N.J. Super. 114, 119 (App.Div. 1985); Jansson v. Fairleigh Dickinson University, 198 N.J. Super. 190, 194 (App.Div. 1985); Clark v. Fog Contracting Co., 125 N.J. Super. 159, 162 (App.Div. 1973), certif. den. 64 N.J. 319 (1973); Picco v. Fords Diner, Inc., 113 N.J. Super. 465, 468 (App.Div. 1971); Brown v. Mortimer, 100 N.J. Super. 395, 401-402 (App.Div. 1968); Burke v. Central Railroad Co. of N.J., 42 N.J. Super. 387, 395-396 (App.Div. 1956); Gibilterra v. Rosemawr Homes, 32 N.J. Super. 315, 322 (App.Div. 1954), aff'd 19 N.J. 166 (1955). Cf. Zaccardi v. Becker, 88 N.J. 245, 253 (1982).
A countervailing consideration is the "need to instill firmness and meaning to the provisions of our discovery rules, thereby maintaining a consistent and predictable sense of order...." Crews v. Garmoney, 141 N.J. Super. 93, 96 (App.Div. 1976). If our discovery rules are to have any meaningful impact upon our civil dockets, they must be enforced fairly. As we stated in Jansson v. Fairleigh Dickinson University, supra, we are not unmindful "of the perils and gravitational pull of the slippery slope wherein the efficacy of our rules is destroyed by the gradual cumulation of exceptions." 198 N.J. Super. at 196. We now find that the hill has a precipice and we are most unwilling to take the fatal plunge.
*315 In sum, we perceive no abuse of the trial court's discretionary authority. The sanction of exclusion was the only viable remedy to obviate the obvious prejudice plaintiff would have suffered had the court chosen a different course. Moreover, at least to some extent, the proffered testimony would have been cumulative. Under these circumstances, we are convinced that the trial court did not err by barring presentation of the witness.

IV.
Accordingly, the matter is remanded to the Law Division for modification of the judgment consistent with this opinion. In all other respects, the judgment is affirmed.
NOTES
[1] This section, which was effective at the time of the accident and the trial, has since been repealed. L. 1987, c. 324 (to be codified at N.J.S.A. 59:9-3.1).
[2] Read literally, the statute says that the settlement amount is to be reduced pro tanto. Obviously, the legislative purpose was to require reduction of the judgment by the amount paid under the settlement. See Task Force Comment to N.J.S.A. 59:9-3 (1972).
[3] We recognize the anomaly resulting from application of this section where the settlement amount is lower than the settling party's percentage share. The non-settling party, in such a case, is required to pay a greater amount of the damages than his percentage of fault would otherwise require. While we acknowledge that a pro tanto reduction might, under certain circumstances, be unjust, we have no right to deviate from the clearly expressed legislative intent.