190 N.J. Super. 344 (1983)
463 A.2d 400
JOHN PREDOTI, PLAINTIFF-APPELLANT,
v.
BERGEN PINES COUNTY HOSPITAL, DR. A.A. OPAO, JOINTLY, SEVERALLY OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS, AND DR. S.P. GHANTA, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1983.
Decided July 11, 1983.
*345 Before Judges BOTTER, POLOW and BRODY.
David Hoffman argued the cause for appellant.
Robert Wright argued the cause for respondents (Melli & Doyne, attorneys; Robert Wright on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
This appeal raises a novel issue of the immunity of a county hospital under the Tort Claims Act for the negligent transfer of a mental patient to a less restrictive setting. Judge O'Halloran held that defendants are immune and granted their motion for summary judgment. We affirm.
The facts are not disputed. On June 14, 1979, members of his family brought plaintiff to defendant Bergen Pines County Hospital ("the hospital"). He was 29 years old and had a history of mental illness. Although the parties described the commitment as "voluntary" we note that plaintiff was admitted to the hospital on certification of an Englewood Hospital physician. Presumably the commitment was pursuant to N.J.S.A. 30:4-46.1 *346 which permits seven days temporary commitment on the certification of a single physician. Defendant Dr. Ghanta, an employee of the hospital, examined plaintiff and concluded that he suffered from "schizophrenia chronic undifferentiated suicidal."
The doctor assigned plaintiff to the closed ward where he was placed in leather restraints "for his own protection." After responding to treatment he was transferred on June 18 to a less restricted open ward. In depositions he recalled that he himself asked to be transferred from the closed ward "because of the violence in it." Defendant Dr. Opao, another hospital employee, participated in the determination to transfer.
Defendants' expert justified the transfer on medical grounds:
The clinical staff on this ward observed the patient carefully over four days and he was appropriately transferred to an open ward. This demonstrated good clinical judgment on the part of the staff since the patient had made no suicidal gestures on the closed ward or any other significant acting out behavior. This is consistent with the standard practice in modern psychiatric hospitals where patients are allowed to progress to less restrictive surroundings as their symptoms become less. This is in keeping with the basic principle that patients should be kept in minimal restraints as they are improving to develop a sense of control. This is important for the schizophrenic patient who may be anxious and does not feel that he has a sense of control.
Significantly, he added, "The chronic schizophrenic patient is never totally impulse-free but they cannot be locked up for the remainder of their lives."
Unlike patients in the closed ward, open ward patients were permitted escorted walks on the hospital grounds. During such a walk on June 20, plaintiff detached himself from the group and was later injured by an automobile while attempting to cross the Garden State Parkway. Plaintiff settled his negligent supervision claim against the hospital and the nurses who were in charge of the walk. Summary judgment was entered in favor of Dr. Ghanta without opposition. What remains is plaintiff's claim that the decision to transfer him to an open ward constituted negligence in that it exposed him to responsibilities and consequent dangers that he was too mentally ill to handle. For our purposes it is assumed that this decision would constitute negligence and was a proximate cause of the accident.
*347 Plaintiff argues that his claim is allowed by N.J.S.A. 59:6-5(b), an exception to the general N.J.S.A. 59:6-5(a) immunity given public entities and their employees for misdiagnosing or failing to treat mental illness. The exception reads:
b. Nothing in subsection a. exonerates a public entity or a public employee from liability for injury proximately caused by a negligent or wrongful act or omission in administering any treatment prescribed for mental illness or drug dependence.
Plaintiff points out that defendants' expert admits that the transfer to an open ward was a form of treatment intended to restore to the patient a healing sense of control. Plaintiff notes that because he did not injure anyone else the hospital and its employees are not protected by N.J.S.A. 59:6-7, which affords immunity for "an injury caused by an escaping or escaped person who has been confined for mental illness or drug dependence...." Camburn v. Marlboro Psychiatric Hospital, 162 N.J. Super. 323 (App.Div. 1978), certif. granted 79 N.J. 476 (1979), certif. dism'd as improvidently granted 81 N.J. 269 (1979).
Even if transferring plaintiff to an open ward is a form of treatment for which defendants would not ordinarily be immune, the decision to transfer is rendered immune by the specific provisions of N.J.S.A. 59:6-6, which reads:
Neither a public entity nor a public employee is liable for any injury resulting from determining in accordance with any applicable enactment:
(1) whether to confine a person for mental illness or drug dependence;
(2) the terms and conditions of confinement for mental illness or drug dependence;
(3) whether to parole, grant a leave of absence to, or release a person from confinement for mental illness or drug dependence.
Decisions affecting confinement of the mentally ill are usually highly predictive and though reasonable can lead to a demonstrably bad result. They are made even more difficult because doctors must consider the important social policy of maximizing the personal liberty of those who are mentally ill.[1] By immunizing *348 these difficult decisions the Legislature allows them to be made in an atmosphere free from the fear of suit.
Affirmed.
NOTES
[1] In the past decade many courts have raised to the level of due process the need to maximize the liberty of the mentally ill. See State v. Krol, 68 N.J. 236, 258, n. 10 (1975). In fashioning involuntary commitment orders, Krol requires that:

The order should be molded so as to protect society's very strong interest in public safety but to do so in a fashion that reasonably minimizes infringements upon defendant's liberty and autonomy and gives him the best opportunity to receive appropriate care and treatment. [Id. at 257-258]
The Legislature has expressed similar concerns in the so-called "bill of rights" for the developmentally disabled. N.J.S.A. 30:6D-5(a)(3) provides in part that:
No person receiving services for the developmentally disabled at any facility shall: ... (3) be physically or chemically restrained or isolated in any manner, except in emergency situations for the control of violent, disturbed or depressed behavior which may immediately result in or has resulted in harm to such person or other person or in substantial property damage.