251 N.J. Super. 486 (1991)
598 A.2d 933
ANTHONY J. GIANNI, JR., EXECUTOR OF THE ESTATE OF PAUL A. GIANNI, ANTHONY J. GIANNI, JR., INDIVIDUALLY AND CATHERINE GIANNI, PLAINTIFFS-RESPONDENTS,
v.
COUNTY OF BERGEN, BERGEN COUNTY BOARD OF CHOSEN FREEHOLDERS, BERGEN PINES COUNTY HOSPITAL, NATIONAL MEDICAL ENTERPRISES, SUSAN KELLY, R.N., ANN CAMPAGNA, R.N., DOROTHY ROLAND, R.N., ALICE KRIEGER, R.N., AND GEORGETTE LASEU, L.P.N., DEFENDANTS-APPELLANTS, AND JOSEPH ZIMMERMAN, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued October 7, 1991.
Decided November 8, 1991.
*488 Before Judges PETRELLA, R.S. COHEN and ARNOLD M. STEIN.
Wendy Ezor-Engler argued the cause for appellant Bergen County Board of Chosen Freeholders (Gallo, Geffner, Fenster, attorneys; Wendy Ezor-Engler, on the brief).
Robert J. Maloof argued the cause for appellant Bergen Pines County Hospital (Hein, Smith, Berezin, Maloof & Spinella, attorneys; Milton Gurny, on the brief).
Matthew R. Kiffin argued the cause for appellant National Medical Enterprises (Widman & Cooney, attorneys; Matthew R. Kiffin, on the brief).
Albert H. Wunsch III argued the cause for respondent (Michael Maggiano & Associates, attorneys; Albert H. Wunsch, on the brief).
No other parties participated in this appeal.
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Defendants-appellants appeal on leave granted from an order of the Law Division which denied summary judgment under the immunity provisions of N.J.S.A. 59:6-7(b) of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. This appeal does not involve defendant Joseph Zimmerman.
Paul Gianni had voluntarily committed himself to Bergen Pines County Hospital (BPCH) on March 23, 1986, because he sought psychiatric treatment. He had a history of chronic *489 paranoid schizophrenia which required hospitalization in psychiatric facilities for most of the years between 1980 and his death in August 1986.
On July 24, 1986, defendant Zimmerman requested admission. He had had in excess of 60 admissions to BPCH for problems related to chronic undifferentiated schizophrenia and substance abuse.
At about 3:00 p.m. on August 9, 1986, Gianni was physically attacked by Zimmerman in the television room of the B-Ground (B-G) unit of BPCH. As a result of this attack by Zimmerman and the beating sustained by Gianni, Gianni lapsed into a coma and died 10 days later at the Hackensack Medical Center. The B-G unit is an acute psychiatric unit, reserved for patients whose conditions require monitoring to prevent injury to themselves or others. As such, it is considered a "locked unit." Although the patients are permitted to roam free and intermingle in the television room which is a section of the locked unit, the nature of the B-G unit as a locked unit prevents the patients from leaving the hospital of their own free will, notwithstanding the voluntary admission. In addition, according to the record, a voluntarily admitted patient at BPCH psychiatric unit is required to give 72 hours notice before discharge. See the then applicable statute, N.J.S.A. 30:4-48 (now repealed).[1]
Not only did Gianni's illness warrant placement in a locked unit, more restrictive methods of restraint were sometimes employed in his case. Upon occasion, he was physically restricted to a geri-chair. On other occasions he had to be placed *490 in a "seclusion room," which is a separate room where the patient is placed "for the patient's own protection and for the protection of the other patients." On the morning of his death, decedent was placed in a seclusion room at 8:30 a.m., and was released into the television or day room at 10:30 a.m.
The complaint filed by the plaintiffs as representative of decedent's estate and on behalf of the individual plaintiffs, alleges negligence by all or some of the defendants charged with the care and treatment of the decedent as well as the care and treatment of Zimmerman. A claim was asserted against Zimmerman for intentional tort.
For the purpose of the summary judgment motion only, the defendants assumed that a prima facie case of negligence was stated. However, they rely on N.J.S.A. 59:6-7(b) and Popek v. Dept. of Human Services, 240 N.J. Super. 128, 572 A.2d 1160 (App.Div. 1990), as conferring immunity upon the public entity and its employees. The trial judge construed N.J.S.A. 59:6-7(b) as being limited solely to situations involving injury by an involuntarily confined patient inflicted on another involuntarily confined patient. On this basis, the motion judge distinguished Popek which had involved involuntarily confined attackers, and presumably an involuntarily confined victim.
N.J.S.A. 59:6-7 provides:
Neither a public entity nor a public employee is liable for:
a. an injury caused by an escaping or escaped person who has been confined for mental illness or drug dependence;
b. an injury caused by any person who has been confined for mental illness or drug dependence upon any other person so confined.
Plaintiffs take the position that the Task Force Comment (comments) to the quoted statutory section indicates a legislative intent to place voluntary patients outside the scope of any and all immunities found in the Tort Claims Act. The comment to N.J.S.A. 59:6-7 states simply: "This provision is prompted by reasoning similar to that contained in the comment to section 59:5-2 of this act."
*491 Generally, N.J.S.A. 59:2-1 deals with the immunity of public entities. Subsection (b) states: "Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person." The comment to subsection (b) of N.J.S.A. 59:2-1 recites:
Subsection (b) is intended to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions. It is anticipated that the courts will realistically interpret both the statutory and common law immunities in order to effectuate their intended scope.
The clear intent of the statute is "to insure that any immunity provisions provided in the act or by common law will prevail over the liability provisions...." Id.
Defendants contend that the provisions of the Tort Claims Act should be interpreted in a common sense manner, and that absent a clear indication of a legislative intent to create a distinction between voluntarily and involuntarily admitted patients, the immunity provisions should prevail. See Ross v. Moore, 221 N.J. Super. 1, 6, 533 A.2d 398 (App.Div. 1987). Although plaintiffs rely on Doe v. Youth and Family Services Division, 178 N.J. Super. 499, 429 A.2d 596 (App.Div. 1981); rev'd on dissenting opinion, 89 N.J. 284, 445 A.2d 1148 (1982), we do not find that case dispositive here. That case dealt with the inapplicability of N.J.S.A. 59:5-1 to 59:5-5, which is limited to prisoners and to injuries inflicted by prisoners on either other prisoners or other persons, to a juvenile in need of supervision (JINS). In any event, those provisions, although held inapplicable to a JINS, are not limited solely to prisoner-to-prisoner injuries (N.J.S.A. 59:5-2b(4)), but include injuries to non-prisoners. The Tort Claims Act immunity applies to public entities and public employees for injuries caused by prisoners, escapees, or persons resisting arrest. See N.J.S.A. 59:5-2.
The California statute, which was essentially the model upon which the New Jersey statute was based, differs in language from the New Jersey statute. The California Tort Claims Act provides "... a public entity is not liable for: (1) An injury *492 proximately caused by a patient of a mental institution. (2) An injury to an inpatient of a mental institution." Cal.Govt.Code § 854.8(a)(1)-(2) (West 1980); see also Report of Attorney General's Task Force on Sovereign Immunity (1972), New Jersey Tort Claims Act at 115-116 ("a public entity is immune for any injury caused by a patient to an inpatient of a mental institution").
A clear indication of the scope of immunity conferred by the California Tort Claims Act in this context is set forth at Cal.Govt.Code § 854.5, which states, "As used in this chapter, confine includes admit, commit, place, detain or hold in custody." In interpreting this provision, the California Court of Appeal determined that the substitution of the term confined for committed indicated a desire to expand the scope of immunity to include persons voluntarily admitted to state facilities. L.A. County-U.S.C. Medical Center v. Superior Court, 155 Cal. App.3d 454, 460, 202 Cal. Rptr. 222, 225 (Cal. App. 1984).
Although the term "confined" is not defined in the New Jersey Tort Claims Act, we are satisfied that the more sensible interpretation of N.J.S.A. 59:6-7(b) does not require a distinction between voluntary and involuntary patients, and that the principles in Popek v. State Dept. of Human Services, supra, 240 N.J. Super. 128, 572 A.2d 1160,[2] apply. In our view the purpose of N.J.S.A. 59:6-7(b) was to confer immunity upon governmental entities and employees for injuries to all patients physically confined which were inflicted by other patients so confined, regardless of whether they were voluntarily or involuntarily committed to the institution. For that reason, although the plaintiffs' decedent initially voluntarily entered BPCH, at the time the beating occurred, he was in a locked unit and was not free to leave at any time of his own will under the *493 then applicable statute (N.J.S.A. 30:4-48),[3] and the policies and procedures of BPCH. Thus, for purposes of the New Jersey Tort Claims Act, he was "confined" and the public entity defendants-appellants had statutory immunity.
We reverse the order denying summary judgment and remand to the trial court for the entry of orders dismissing the complaint against the defendants-appellants.
NOTES
[1] N.J.S.A. 30:4-48 was the provision governing discharge of voluntary patients, upon notice, in effect at the time the incident occurred. This provision was repealed by L. 1987, c. 116, effective June 7, 1989, and replaced by N.J.S.A. 30:4-27.20 as to voluntary admissions. It reduced the maximum period to delay discharge from 72 hours to "48 hours or the end of the next working day from the time of the request, whichever is longer," unless it is determined "that the patient needs involuntary commitment" and a court order is obtained under N.J.S.A. 30:4-27.10.
[2] It is not clear whether the victim in Popek had been initially voluntarily or involuntarily committed. As far as we can determine the pleadings merely referred to "committed." N.J.S.A. 59:6-1 does not contain a relevant definition. Perhaps that is an appropriate subject for legislative consideration.
[3] See note 1, supra.