270 N.J. Super. 19 (1994)
636 A.2d 535
DEANNA PERONA, FRANK PERONA III, AND JACQUELIN PERONA, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF MULLICA, MULLICA TOWNSHIP POLICE DEPARTMENT, SERGEANT LARRY SURKIN, PATROLMAN JAMES WILD, J/S/A, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 1993.
Decided January 14, 1994.
*21 Before Judges PETRELLA, BAIME and CONLEY.
Carl Ahrens Price, attorney for appellants.
Budd Larner Gross Rosenbaum Greenberg & Sade, attorneys for respondents (Susanna J. Morris, on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Judgment was entered in favor of defendant, Mullica Township, and two of its police officers, defendants Sergeant Larry Surkin and Patrolman James Wild, on the basis of the immunity provisions of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3. Specifically, the trial judge held that N.J.S.A. 59:3-2(b) and N.J.S.A. 59:6-6 gave immunity from tort liability to the police officers in the exercise of their police functions and the performance of their duties in this case.
Plaintiffs Deanna Perona, her husband Frank Perona III, and their daughter Jacquelin Perona, appeal arguing that (1) N.J.S.A. 59:3-2(b) does not apply to police officers in the exercise of their police function; (2) the motion judge misapplied N.J.S.A. 59:6-6, which they contend does not even apply to police officers in the *22 performance of their duties; (3) the motion judge should have applied the standards contained in N.J.S.A. 30:4-27.6-7; and (4) the police officers were required, given the circumstances, to take Deanna Perona into custody, especially when there was concern by the husband that she might be suicidal.
The incident involved in this case occurred on January 4, 1990, when Officers Surkin and Wild responded to a domestic violence complaint at the residence of Frank and Deanna Perona in Mullica Township. Upon arrival, Deanna Perona told Officer Surkin that there was no domestic dispute, though she was having a problem. As stated by Surkin at his deposition:
She [Deanna Perona] wanted to go for a walk, and her husband [Frank Perona] chased her, and brought her back to the house, and she just wanted him to understand that she is old enough that if she wants to go for a walk, she can be left alone and go for a walk.
According to Surkin, he explained to Frank Perona that the officers could not prohibit Deanna from taking a walk.
Frank Perona then told Surkin that he observed Deanna walking near traffic on Route 30. He also gave Surkin a handwritten note, which Deanna wrote, that provided in part:
Frankie, I love you and I always will. Please give my daughter the best of every thing[.] Please[,] that[']s my last wish. Please. Send her to Catholic school and get her into ballet. Make her a little lady. And find her a mother who cares for her honestly. Please have my dogs put to sleep[,] please. If you love me you will. Tell Joe and Mom and all my family I love them. Not my dad.
Please live your life for my daughter. Tell Kimmy I'm sorry and I love her and tell Dave he meant a lot to me. Please give Jacqueline every thing she wants.
Deanna Perona also wrote on the margin: "I loved you more than I ever showed it. I'm sorry but you just deserve better."
Frank Perona says he told the officers that he was concerned about Deanna's safety and welfare because she might commit suicide and, further, asked the police "to take whatever steps were necessary to detain her." As Surkin testified at his deposition:
He was upset over the contents of the note, stating that, and I can't quote him exactly, to the effect that he was worried about what the contents of the note were referring to.
*23 After reading the note, Surkin asked Deanna Perona what she meant by it and why she wrote it. Deanna told him that the note reflected her wishes in case she decided to hitchhike and something happened to her.
Surkin did not ask either Frank or Deanna any further questions about the note because he was "fairly satisfied" with her response. Surkin stated: "She was very straightforward, very blunt with her answer. It didn't appear as if she was trying to cover up anything, or to side step the issue."
Neither officer followed up with further questions about the note. Surkin stated at his deposition, "[t]his could have easily been a statement made by a person who was going to go somewhere and maybe not return." Moreover, he considered the note as consistent with someone who "was intending to meet somebody, or get in the car with somebody and go, and not return to the residence and was leaving."
Surkin then inquired of Deanna Perona whether she was on any medication. Deanna responded that, although she had unfilled prescriptions, she was not on any medication. Her husband did tell Surkin that Deanna had been treated and released from a hospital several weeks before for depression. Surkin did not inquire further about her hospitalization because, according to him, Deanna did not seem depressed in the few minutes that he and Officer Wild spoke to her.
Based upon his conversation with and personal observations of Deanna Perona, as well as his belief that she could have simply intended to never return, Surkin concluded that there was nothing further to do and, therefore, both officers left.
Shortly thereafter, Deanna Perona left her home and apparently attempted suicide by placing herself in front of traffic on westbound Route 30. She was initially struck by one vehicle and, moments later, struck again by another vehicle while she was lying on the highway.
*24 The motion judge correctly assumed for purposes of summary judgment that Deanna Perona attempted to commit suicide. Essentially, all other material facts are undisputed. The judge also correctly applied the principles in Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 110 A.2d 24 (1954), with respect to issues of material fact, as well as with respect to summary judgment motions based on municipal tort immunities as contained in Morey v. Palmer, 232 N.J. Super. 144, 148, 556 A.2d 811 (App.Div. 1989).
Plaintiffs argue, however, that N.J.S.A. 30:4-27.6 imposes the appropriate standard and duty in this case and required the officers to take Deanna Perona into custody. That statute provides in pertinent part:
A State or local law enforcement officer shall take custody of a person and take the person immediately and directly to a screening service if:
a. On the basis of personal observation, the law enforcement officer has reasonable cause to believe that the person is in need of involuntary commitment;
* * * * * * * *
The involvement of the law enforcement authority shall continue at the screening center as long as necessary to protect the safety of the person in custody and the safety of the community from which the person was taken.
The statutory scheme in Title 30 also provides in N.J.S.A. 30:4-27.7a for immunity from civil and criminal liability for a law enforcement officer who in good faith "takes reasonable steps to assess, take custody of, detain or transport an individual for the purposes of mental health assessment or treatment...."
Plaintiffs argue that N.J.S.A. 30:4-27.6 and N.J.S.A. 30:4-27.7 apply here to the exclusion of all other statutory provisions, including the Tort Claims Act.[1] They cite, however, no authority whatsoever in support of their position, but instead simply state that the Title 30 provisions establish the applicable standards and subjects the officers to negligence. Although N.J.S.A. 30:4-27.6 imposes a duty upon law enforcement officers and N.J.S.A. 30:4-27.7 *25 affords immunity if an officer acts reasonably and in good faith, plaintiffs' contentions lack merit for several reasons.
First, their argument is inconsistent, i.e., they argue the inapplicability of the Tort Claims Act, yet base their complaint upon a tort liability theory. Second, acceptance of their argument, which lacks a legal basis, effectively requires nullification and abrogation, if not implied repealer, of certain salient provisions of the Tort Claims Act. Third, N.J.S.A. 30:4-27.7 affords immunity when a law enforcement officer in fact decides to detain or take a person into custody for purposes of mental health treatment or assessment, but does not address whether a law enforcement officer would be afforded immunity for failure to act in a particular situation based upon a discretionary decision such as is involved here. Fourth, the enactment of N.J.S.A. 30:4-27.7 in 1987[2] did not, as plaintiffs suggest, supersede or abolish all other immunity provisions, but simply provided another layer of protection for both law enforcement officers and persons subject to confinement based upon N.J.S.A. 30:4-27.6.
As the motion judge reasoned:
What I think 27.7 does is grants a limited immunity in the event that the person is taken into confinement and what this does is it provides to the person so confined some protections against arbitrariness and capriciousness because basically if you grab him, you do so at your peril or if you grab her, in this case, you do so at your peril unless what you did was reasonable. It provides protection to people who are unreasonably grabbed is basically what 27.7 does as well as affording protection to the officer who does take someone into custody having a reasonable basis. So you see it does nothing to detract from our previous determination that there is no liability when you decide not to act.
We turn now to the claim that the Tort Claims Act immunity provisions do not apply. We need not detail the history of the Tort Claims Act, because that has been discussed in numerous cases. We merely refer to Rochinsky v. State of N.J. *26 Dept. of Transp., 110 N.J. 399, 541 A.2d 1029 (1988), and our Supreme Court's statement that "`immunity is the dominant consideration of the Act.' Even when one of the Act's provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity." Id. at 408, 541 A.2d 1029 (quoting Kolitch v. Lindedahl, 100 N.J. 485, 498, 497 A.2d 183 (1985) (O'Hern, J., concurring)).
N.J.S.A. 59:6-6 provides:
a. Neither a public entity nor a public employee[[3]] is liable for any injury resulting from determining in accordance with any applicable enactment:
(1) whether to confine a person for mental illness or drug dependence;
(2) the terms and conditions of confinement for mental illness or drug dependence;
(3) whether to parole, grant a leave of absence to, or release a person from confinement for mental illness or drug dependence.
Here, plaintiffs mistakenly rely upon Predoti v. Bergen Pines County Hosp., 190 N.J. Super. 344, 463 A.2d 400 (App.Div. 1983) and McNesby v. Dept. of Human Services, 231 N.J. Super. 568, 555 A.2d 1186 (App.Div.), certif. denied, 117 N.J. 127, 564 A.2d 854 (1989), in asserting that N.J.S.A. 59:6-6 applies only to physicians.
In Predoti, supra, 190 N.J. Super. at 346, 463 A.2d 400, plaintiff had been initially assigned to a closed ward but, after responding to treatment, was transferred to a less restrictive open ward, which allowed him to take escorted walks on the hospital grounds. During such a walk, plaintiff left the escorted group and was later injured by an automobile while he attempted to cross the Garden State Parkway. Ibid. Plaintiff subsequently brought suit alleging that the decision to transfer him to a less restrictive ward constituted a negligent treatment decision. Ibid.
We rejected plaintiff's claim, holding that the decision to transfer a patient to a less restrictive setting was within the immunity set forth in N.J.S.A. 59:6-6. Id. at 347, 463 A.2d 400. Further, we reasoned that "[b]y immunizing these difficult decisions the *27 Legislature allows them to be made in an atmosphere free from the fear of suit." Id. at 347-348, 463 A.2d 400.
In McNesby, supra, 231 N.J. Super. at 570, 555 A.2d 1186, suicide precautions were instituted when the patient, McNesby, was initially admitted into a hospital. His treatment team, however, subsequently transferred him to a ward that allowed unsupervised access to the hospital grounds between certain hours. Ibid. McNesby thereafter attempted suicide by setting himself afire, and died two weeks later. Id. at 571, 555 A.2d 1186. In a suit by the administrator of his estate, it was claimed that the hospital failed to supervise McNesby properly after it decided to transfer him to a less restrictive environment. Id. at 573, 555 A.2d 1186. The administrator's argument was rejected on the basis that the State was immune from liability for any negligent supervision under N.J.S.A. 59:6-6(a)(2), which applied to decisions concerning the terms and conditions of confinement for mental illness. Id. at 575-576, 555 A.2d 1186.
Here, no case or statutory provision within the Tort Claims Act even remotely suggests that N.J.S.A. 59:6-6 applies only to physicians. Instead, the statutory language of N.J.S.A. 59:6-6, i.e., "public employee" encompasses both Surkin and Wild, who were both employees of the Township of Mullica at the relevant time. Moreover, Predoti and McNesby support the public policy mandate favoring immunity over liability so as to protect discretionary decisions made by public entities and their employees.
Plaintiffs also assert that "even if 59:6-6 did apply, the actions of a police officer pursuant to 30:4-27.6 does not result in confinement of an individual as anticipated by 59:6-6." This assertion is meritless. N.J.S.A. 30:4-27.6 is the statute, as required by N.J.S.A. 59:6-6, under which the officers determined whether or not to confine Deanna Perona for mental illness. Thus, the trial judge reasoned:
This is, for want of a better term, the front line of a series of mental health medical types of determinations which have to be made with regard to a given person.

*28 Obviously the police officer's ability to make that determination continues only to permit confinement through the mental health screening process, but they're the front line and they make the initial determination as to whether to confine a person for mental illness or drug dependence. If Mrs. Perona was taken by the police officer from the home, it isn't an arrest, but it is a form of authorized civil confinement. Her freedom of movement from the time they take her from then on out is "a confinement" I think within the meaning of [N.J.S.A. 59:6-6].
And that being so, I believe that the officers, in their determination, enjoy an absolute, as oppose to a qualified type of immunity with respect to this.
Furthermore, although the Tort Claims Act does not define the term "confined," the language in N.J.S.A. 30:4-27.6, i.e., "take custody" is essentially compatible with the language of N.J.S.A. 59:6-6, i.e., "to confine," and does not preclude immunity for law enforcement officers. See Gianni v. County of Bergen, 251 N.J. Super. 486, 492, 598 A.2d 933 (App.Div. 1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992) (A "more sensible interpretation of N.J.S.A. 59:6-7(b) does not require a distinction between voluntary and involuntary patients" even though the term "confined" is not defined in the Tort Claims Act.).
Finally, plaintiffs' argument that N.J.S.A. 59:3-2(b) does not afford immunity to police officers in the exercise of their functions is rejected as without merit. N.J.S.A. 59:3-2 provides in pertinent part:
a. A public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him;
b. A public employee is not liable for legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;
c. A public employee is not liable for the exercise of discretion in determining whether to seek or whether to provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring or personnel and, in general, the provision of adequate governmental services;
d. A public employee is not liable for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public employee was palpably unreasonable.
N.J.S.A. 59:2-3, the public entity analog to section 3-2, contains nearly identical statutory language.
*29 Brown v. Brown, 86 N.J. 565, 577, 432 A.2d 493 (1981), makes clear that discretionary determinations by public entities under subsection (b) of N.J.S.A. 59:2-3 and, necessarily, ones made by public employees under subsection (b) of N.J.S.A. 59:3-2, need not rise to the level required by subsection a.[4] Thus, discretionary decisions by law enforcement officers need not involve policy, but may merely involve operational decisions such as whether to take a person into custody based on a claim of mental illness. As stated in Delbridge v. Schaeffer, 238 N.J. Super. 323, 350-351, 569 A.2d 872 (Law Div. 1989):
The act, as it relates to a public employee's conduct, represents an attempt by the Legislature to reach a fair accommodation between removing the constant threat that an exercise of an official's authority or discretion will be second-guessed, and thereby, subjected to legal challenge, and the necessity of mandating that such public officials conform their actions to a certain level of propriety. Pursuant to N.J.S.A. 59:3-2, decisions of this type have been immunized, recognizing that public employees ... frequently engage in a wide range of discretionary decision-making, not of all of which could be anticipated but which often affect, and possibly disgruntle, vast numbers of people.
Discretionary decisions made by public employees are entitled to immunity. See Longo v. Santoro, 195 N.J. Super. 507, 518, 480 A.2d 934 (App.Div.), certif. denied, 99 N.J. 210, 491 A.2d 706 (1984); Expo, Inc. v. City of Passaic, 149 N.J. Super. 416, 424-425, 373 A.2d 1045 (Law Div. 1977).
In addition, under N.J.S.A. 59:3-5: "A public employee is not liable for an injury caused by his adoption of or failure to *30 adopt any law or by his failure to enforce any law."[5]N.J.S.A. 59:2-4, the public entity analog to section 3-5, provides: "A public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law."
As stated in Bombace v. City of Newark, 125 N.J. 361, 367, 593 A.2d 335 (1991), the statutory language "reasonably suggests that the essential conduct constituting failure to enforce a law would consist of a failure to act, an omission, or non-action." The Court further stated "that the absolute immunity of section 3-5 applies to non-action or the failure to act in connection with the enforcement of the law ..." Id. at 368, 593 A.2d 335. See Marley v. Borough of Palmyra, 193 N.J. Super. 271, 283, 473 A.2d 554 (Law Div. 1983) (Public employee who fails to enforce any law need not show good faith to enjoy absolute immunity.).
In this case, N.J.S.A. 59:6-6, as well as N.J.S.A. 59:3-2 and N.J.S.A. 59:2-3, afford defendants absolute immunity based upon their discretionary determination that Deanna Perona did not need to be confined. They also are immune under N.J.S.A. 59:3-5 and N.J.S.A. 59:2-4 for their failure to utilize the civil confinement provisions of N.J.S.A. 30:4-27.6, even though their decision in hindsight was erroneous, i.e., they did not conclude there was "reasonable cause to believe" that Deanna Perona was in need of involuntary confinement based upon her suicide note, her husband's statements, her recent hospitalization for depression, and her unfilled prescriptions for medication.
Affirmed.
NOTES
[1] N.J.S.A. 59:1-1 to 59:12-3.
[2] The law imposes a strong presumption against implied repealers of statutes. See Brewer v. Porch, 53 N.J. 167, 173, 249 A.2d 388 (1969). See also State v. Des Marets, 92 N.J. 62, 93, 455 A.2d 1074 (1983) (Handler, J., dissent and concurrence).
[3] N.J.S.A. 59:1-3 defines "public employee" as "an employee of a public entity...."
[4] See, e.g., Costa v. Josey, 83 N.J. 49, 59, 415 A.2d 337 (1980) ("[T]he exemption contemplated under N.J.S.A. 59:2-3(a) concerns the `exercise of judgment or discretion' in making basic policy  the type made at the planning, rather than the operational level of decisionmaking."); Daniel v. State, Dept. of Transp., 239 N.J. Super. 563, 598, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990) ("[S]ubsection c and d do not require `high-level planning decisions' as the predicate for immunity as does subsection a....") (citations omitted); Longo v. Santoro, 195 N.J. Super. 507, 515, 480 A.2d 934 (App.Div.), certif. denied, 99 N.J. 210, 491 A.2d 706 (1984) ("Subsection a of N.J.S.A. 59:2-3 has been interpreted as only granting immunity where the asserted discretionary decisions are `actual, high-level policymaking decisions' or `basic policy determinations.'") (citation omitted).
[5] Once a public employee decides to "act" it must be in accordance with N.J.S.A. 59:3-3, which provides in part:

A public employee is not liable if he acts in good faith in the execution or enforcement of any law.
This section does not apply here because the officers did not "act" in connection with N.J.S.A. 30:4-27.6.