278 N.J. Super. 312 (1995)
650 A.2d 1044
GERALD DEL TUFO, EXECUTOR OF THE ESTATE OF DONALD KIKEN, PLAINTIFF-RESPONDENT,
v.
TOWNSHIP OF OLD BRIDGE, OLD BRIDGE TOWNSHIP POLICE DEPARTMENT, PATROLMAN THOMAS COLLOW, PATROLMAN ROBERT MAHER, WILLIAM A. VOLKERT, CHIEF OF THE OLD BRIDGE TOWNSHIP POLICE DEPARTMENT AND JERRY PALUMBO, ACTING CHIEF OF POLICE OF OLD BRIDGE TOWNSHIP POLICE DEPARTMENT AND JOHN DOES (1 THROUGH 5), DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1994.
Decided January 4, 1995.
*315 Before Judges HAVEY, BROCHIN and CUFF.
James B. Moran argued the cause for appellants Township of Old Bridge and Old Bridge Township Police Department (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Mr. Moran, of counsel and on the brief).
Richard Galex argued the cause for respondent (Galex, Tortoreti & Tomes, attorneys; Mr. Galex, on the brief).
No other parties participated in this appeal.
The opinion of the court was delivered by BROCHIN, J.A.D.
In this wrongful death action, defendants Township of Old Bridge and Old Bridge Township Police Department[1] have appealed from a $300,000 judgment entered in favor of plaintiff Gerald Del Tufo, executor of the estate of Donald Kiken. Mr. Kiken died while he was in the custody of the Old Bridge police. The immediate cause of his death was cardiac arrest caused by ingesting a massive amount of cocaine. The gravamen of this action by his executor against the Township is that the police are liable for Mr. Kiken's death because they failed to summon emergency medical assistance for him promptly after they arrested him. Instead, the police called the first-aid squad only after he *316 had collapsed while he was being taken from a police car to the station house, approximately one-half hour after his arrest.
As grounds of appeal, the defendants allege that the jury verdict was against the weight of the evidence because the Old Bridge police could not reasonably have been expected to perceive Mr. Kiken's need for immediate medical attention. The defendants also contend that the trial court erred in refusing to instruct the jury to determine the comparative fault of Mr. Kiken and the police, in ruling as a matter of law that the defendants were not entitled to immunity pursuant to the Tort Claims Act, N.J.S.A. 59:1-1 et seq., and in failing to grant a mistrial or to appropriately instruct the jury when plaintiffs advanced a factual argument during summation which, defendants allege, should have been precluded by collateral estoppel.
For the following reasons, we conclude that the jury verdict was not against the weight of the evidence and we agree with the trial court's rejection of defendants' immunity and collateral estoppel arguments. However, we hold that the jury should have been instructed to weigh the comparative fault of defendants and of the plaintiff's decedent.
From the evidence before it, the jury could have found the following facts. At 10:58 p.m. in the month of August, a telephone call notified the Old Bridge police that an automobile accident had just occurred in, or adjacent to, a residential development. As the result of that notice, Police Officers Thomas Collow and Robert Maher, arrived at the scene of the accident at 11:04 p.m. in separate patrol cars. A group of people were gathered outside. Several vehicles that had been involved in an accident stood along the road and a white Cadillac, which also appeared to have been in an accident, was parked partially on a lawn and partially on the sidewalk. The engine of the Cadillac was running, and Donald Kiken was sitting at the wheel.
Officer Collow approached the Cadillac. He told Mr. Kiken to turn off the engine, that the police were there and that everything would be "OK." Mr. Kiken suddenly backed the car off the *317 sidewalk, struck Officer Collow's left leg and knocked him to the ground. The car also struck Officer Maher, knocking him to the ground.
Within a few minutes, Officer Maher found the Cadillac parked in a driveway of Mr. Kiken's nearby residence. Mr. Kiken, who was in the car, had driven into his closed garage door. Officer Maher approached the car and asked Mr. Kiken if he was all right. Mr. Kiken answered, "Yes, I'm fine. I did nothing wrong. I did nothing wrong." According to Officer Maher's incident report, he noticed that there was an eighth-of-an-inch long "facial laceration due to [a] motor vehicle accident" on the bridge of Mr. Kiken's nose.
Sergeant Crowley arrived. There was a brief struggle when he and Officer Maher handcuffed Mr. Kiken and told him that he was under arrest. At 11:09 p.m., Officer Maher radioed to headquarters that Mr. Kiken was under arrest. Pursuant to Sergeant Crowley's direction, Officer Maher put Mr. Kiken in the back seat of a patrol car.
Officer Collow, who had driven off to find Mr. Kiken, returned to the residential development where the accident had taken place. As Officer Collow approached the police car in which Mr. Kiken was seated, he saw Mr. Kiken turning his body and kicking the rear passenger side windows. Officer Maher saw Mr. Kiken attempt to kick out the back window of the patrol car. Sergeant Crowley heard a thumping sound coming from the back seat. The patrol car was shaking vigorously up and down, and Mr. Kiken was "undulating" without uttering any sound.
Sergeant Crowley ordered Officer Maher to transport Mr. Kiken to police headquarters. At 11:20 p.m., Officer Maher radioed that they were on route there. The trip took approximately two minutes. When they arrived, Officer Maher and two other waiting police officers helped Mr. Kiken out of the patrol car. After taking a few steps, Mr. Kiken collapsed. The policemen removed the handcuffs and moved him into the cell area. While one administered CPR, another called the First Aid Squad. *318 The ambulance arrived at police headquarters at 11:36 p.m. When Mr. Kiken arrived at the hospital, he was in cardiac arrest. At 12:03 a.m., he died of cardiac failure caused by ingesting between one-and-a-half and three-and-a-half grams of cocaine, well in excess of a lethal dose.
According to the testimony of plaintiff's experts, the fact that Mr. Kiken had been involved in an accident resulting in heavy damage to his car, that he struck several other vehicles, that he drove his car into a closed garage door, and that there was a laceration near the bridge of his nose showed that he was in need of medical attention. His abnormal movements in the back seat of the patrol car, made without any utterances, were probably seizures. These indicated that his condition was deteriorating and his need for medical assistance was becoming more urgent.
According to the expert testimony, if medical assistance had been summoned at 11:09 p.m. and Mr. Kiken had reached the hospital by 11:25 p.m., he would have had approximately a 75 percent chance of survival. If medical help had been summoned at 11:20 p.m. and he had arrived at the hospital at 11:40 p.m., he would have had approximately a 50 percent chance of survival. The plaintiff's medical expert attributed Mr. Kiken's death to the failure to treat him for acute cocaine intoxication. Plaintiff's expert on police procedures testified that the Old Bridge police should have recognized from Mr. Kiken's condition and the attendant circumstances that he required immediate medical assistance, and they should immediately have summoned an ambulance that would have rushed him to a hospital.
The defendants do not contest that when the police arrest someone, they have a duty to provide necessary medical treatment. See Hake v. Manchester Township, 98 N.J. 302, 306, 486 A.2d 836 (1985). They dispute whether the police could reasonably have known that Mr. Kiken required emergency medical care and, even if they had recognized the signs and called an ambulance as soon as possible, whether he would have had a substantial prospect of recovery. See Scafidi v. Seiler, 119 N.J. 93, 108, 574 *319 A.2d 398 (1990) (defendant is liable in damages if his negligence was a substantial factor in diminishing defendant's chance of recovery[2]); Hake v. Manchester Township, supra, 98 N.J. at 306, 486 A.2d 836; Evers v. Dollinger, 95 N.J. 399, 417, 471 A.2d 405 (1984). On those factual issues, the testimony was controverted. However, on the basis of a careful review of the record, we agree with the trial judge that the evidence presented at trial does not show that the jury's verdict clearly resulted in "a miscarriage of justice under the law." See R. 2:10-1. The defendants' motion for a new trial on the ground that the verdict was against the weight of the evidence was therefore properly denied.
In Blazovic v. Andrich, 124 N.J. 90, 107, 590 A.2d 222 (1991), our Supreme Court held that the negligence of one party should be compared with the intentional fault of another in substantially the same way as if both the parties were negligent. But there is no New Jersey case which has considered whether a damage award in a case such as the present one should reflect the jury's comparison of the prisoner's fault in ingesting a toxic dose of an illegal drug, and then denying his need for help, with the custodial authority's negligence in failing to provide adequate medical assistance. Several decided cases, however, are pertinent, and they point in different directions. In Cowan v. Doering, 111 N.J. 451, 468, 545 A.2d 159 (1988), a case in which a mentally disturbed patient who had injured herself by jumping from a hospital window sued her doctors and nurses for their negligent failure to protect her from injury, our Supreme Court held that the defendants were not entitled to assert comparative negligence as a defense. The Court ruled that the plaintiff's mental illness did not necessarily eliminate considerations of comparative negligence, but, the Court held, "The proposition of law which governs this case is one that excuses a plaintiff from exercising reasonable self-care *320 only when that duty is itself encompassed by the duty of care owed by the defendant to the plaintiff." Id. at 460, 545 A.2d 159.
In Ostrowski v. Azzara, 111 N.J. 429, 545 A.2d 148 (1988), plaintiff sued her podiatrist for malpractice in removing a toenail in a way which allegedly caused her to lose part of her foot from gangrene. The defendant denied malpractice and contended that plaintiff's misfortune was the result of her heavy smoking, obesity, and inadequately controlled diabetes, all of which antedated his services, and of her negligently inadequate post-operative care of herself. The Court held that the conduct of a plaintiff which occurs after the defendant's negligence and aggravates the consequences of that negligence may be relevant to proximate cause or to mitigation, but not to contributory or comparative negligence. Id. at 444, 545 A.2d 148. Furthermore, "The pretreatment health habits of a patient are not to be considered as evidence of fault that would have otherwise been pled in bar to a claim of injury due to the professional misconduct of a health professional." Ibid.
These cases may be thought to provide some support for the trial judge's ruling that there was no issue of Mr. Kiken's comparative negligence to be submitted to the jury in the present case. However, Lee v. Kiku Restaurant, 127 N.J. 170, 603 A.2d 503 (1992), points in the opposite direction. In that case, a dram shop action brought by an injured automobile passenger against the restaurant which served alcoholic beverages to his visibly intoxicated driver, the Court overruled Buckley v. Estate of Pirolo, 101 N.J. 68, 500 A.2d 703 (1985), and held that:
[I]n dram shop litigation a jury should apportion fault between the patron and the tavern based on the extent to which each party's negligence contributed to the plaintiff's injuries. Thus, in determining a patron's fault, a jury may consider the extent to which the plaintiff's injuries were caused by the patron's conduct in drinking to the point of intoxication. Similarly, the jury will consider the extent to which the tavern's actions in serving the patron after obvious intoxication contributed to the plaintiff's injuries....
... [A]n intoxicated patron may no longer avoid responsibility for injuries proximately caused by his or her voluntary decision to consume alcohol to the point of intoxication. [Emphasis added.]

Lee, supra, 127 N.J. at at 183-84, 603 A.2d 503.
*321 See also Fisch v. Bellshot, 135 N.J. 374, 640 A.2d 801 (1994), which applied the comparative fault rule of Lee to a dram shop action against a tavern by the personal representative of an intoxicated driver killed in a one-car accident.
The Court in Lee expressly distinguished the case of a visibly intoxicated patron whom a tavern continued to serve from cases involving "other plaintiffs who are excused for their failure to protect themselves from harm." Lee, supra, 127 N.J. at 184, 603 A.2d 503. One example of the latter group which Lee cites is Cowan v. Doering, supra, the case of the mentally disturbed hospital patient who jumped from a window.
We conclude that the present case should be grouped with Lee and not with Doering. No moral culpability was attributable to the plaintiff in Doering for jumping out of a window if her doing so was caused by mental illness. The plaintiff was hospitalized in order to prevent her from acting on her suicidal tendencies. The hospital and the doctors and nurses who attended her there knowingly assumed that duty. In the present case, Mr. Kiken's primary fault was illegally ingesting an overdose of cocaine. Although the police had the duty to attempt to protect him from the physical consequences of his overdose if they knew or should have known of his condition, he was not placed in their protective care because of that condition. To paraphrase the language of Cowan v. Doering, supra, Mr. Kiken had the capacity to exercise reasonable self-care. Therefore, his duty of self-care was not subsumed by the duty of care owed to him by the Old Bridge police. Id. 111 N.J. at 460, 545 A.2d 159.
In Ostrowski v. Azzara, supra, 111 N.J. at 434-35, 545 A.2d 148 the plaintiff's health habits before she presented herself to the defendant for surgery, like Mr. Kiker's conduct before his arrest, was a cause in fact of her subsequent misfortune. Ostrowski explained why comparative negligence was nonetheless inapplicable:
The pre-treatment health habits of a patient are not to be considered as evidence of fault that would have otherwise been pled in bar to a claim of injury due to the *322 professional misconduct of a health professional. This conclusion bespeaks the doctrine of the particularly susceptible victim or recognition that whatever the wisdom or folly of our life-styles, society, through its laws, has not yet imposed a normative life-style on its members; and, finally, it may reflect in part an aspect of that policy judgment that health care professionals have a special responsibility with respect to diseased patients.

Id. at 444, 545 A.2d 148.
Unlike the plaintiff in Ostrowski, Mr. Kiken's perilous physical health resulted from conduct which violated those social norms which are validated and enforced by our criminal laws. Our social norms weigh his culpability as even greater than that of the intoxicated drinker in Lee and Fisch, supra. If the issue is whether Mr. Kiken's fault should be viewed like that of a self-indulgent patient who harms herself by smoking and by an undisciplined diet or whether it should be viewed like that of a driver who voluntarily drinks to intoxication, the answer must be, like the latter.
The Court says in Lee, "In reassessing the principles that should govern liability in dram-shop litigation, we are strongly influenced not only by the principles of comparative negligence but also by the public interest in deterring those who would create risk to others by voluntarily drinking to the point of intoxication." Lee v. Kiku Restaurant, supra, 127 N.J. at 182, 603 A.2d 503. Analogous considerations command even greater weight in the present case. Unless plaintiff's claim is barred by an immunity provision of the Tort Claims Act, it must be remanded for a retrial at which the jury should be instructed to compare his culpability in ingesting a lethal dose of cocaine with the defendant's negligent failure to summon medical assistance more promptly. If there is medical evidence that, despite the amount of cocaine in his system, he knew or should have known better than to have denied a need for such assistance, that too may enter into the weighing process. Cf. Hickey v. Zezulka, 439 Mich. 408, 440 Mich. 1203, 487 N.W.2d 106, 123 (1992) (concurring opinion which was the majority opinion on this point) (in action by personal representative of decedent who hanged himself with his belt while in custody for drunk driving, the policeman who negligently failed to remove the belt *323 and to monitor the prisoner is entitled to have her negligence compared with his fault for inflicting injury on himself).
We turn next to defendants' argument that even if they were negligent, they are protected from liability by various immunity provisions of the Tort Claims Act. The sections of the Act upon which they rely are N.J.S.A. 59:6-4 and -5; N.J.S.A. 59:5-2(b)(3); N.J.S.A. 59:3-3; and N.J.S.A. 59:3-2(d).
N.J.S.A. 59:6-4 reads as follows:
Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others. For the purposes of this section, "public employee" includes a private physician while actually performing professional services for a public entity as a volunteer without compensation.
The Report of New Jersey Attorney General's Task Force on Sovereign Immunity, which accompanied the draft legislation that was adopted as the New Jersey Tort Claims Act, says of this provision that it
grants an immunity ... pertain[ing] to the failure to perform adequate public health examinations, such as public tuberculosis examinations, physical examinations to determine the qualifications of boxers and other athletes, and eye examinations for vehicle operator applicants.
When N.J.S.A. 59:6-4 was amended in 1983 by the addition of the last sentence, the statement of the Senate Labor, Industry and Professions Committee which accompanied the amendment noted that the immunity granted by the statute "pertains to the failure to perform adequate public health examinations, such as tuberculosis, scoliosis, hearing, eye, mental, and other examinations for public health purposes."
The jury's verdict in the present case establishes that when the police arrested Mr. Kiken, they negligently failed to perceive, or negligently failed to act on the perception, that he urgently required immediate medical assistance. The authoritative legislative history of N.J.S.A. 59:6-4 reinforces our conviction, based upon the plain meaning of its text, that this section was not *324 intended to immunize the police upon those facts. Cf. Hake v. Manchester Twp., 98 N.J., supra, at 311, 486 A.2d 836 (police have a duty to attempt to save the life of an arrestee who hangs himself in a suicide attempt).
N.J.S.A. 59:6-5 reads:
Neither a public entity nor a public employee is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or is a drug dependent person or from failing to prescribe for mental illness or drug dependence; provided, however, that nothing in this section exonerates a public entity or a public employee who has undertaken to prescribe for mental illness or drug dependence from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing.
Demonstrating the inapplicability of this section to the facts of the present case requires less discussion than the previous section. No evidence was presented that Mr. Kiken was drug dependent or that he was suffering from a mental illness in the common meaning of that phrase[3].
N.J.S.A. 59:3-2(d) states:
A public employee is not liable for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public employee was palpably unreasonable.
Nothing in this section shall exonerate a public employee for negligence arising out of his acts or omissions in carrying out his ministerial functions.
For this qualified immunity to apply  qualified because it may be overcome by a finding that the employee's determination was "palpably unreasonable"  there are two prerequisites. First the challenged conduct must constitute the "exercise of discretion." *325 Secondly, the conduct must be a determination whether and how to utilize resources "in the face of competing demands." See Brown v. Brown, 86 N.J. 565, 578-79, 432 A.2d 493 (1981) (supervising engineer's decision about the sequence in which road maintenance work would be performed); Longo v. Santoro, 195 N.J. Super. 507, 518, 480 A.2d 934 (App.Div.), certif. denied, 99 N.J. 210, 491 A.2d 706 (1984) (school principal's discretionary decision where to station teachers during lunch hour).
Our reported decisions which the parties have cited in support of their arguments that this section is or is not applicable to the present case focus on whether or not a public employee's conduct was discretionary or ministerial. For example, in Perona v. Township of Mullica, supra, 270 N.J. Super. at 19, 636 A.2d 535 (failure to take a mentally disturbed person to a screening facility); and Morey v. Palmer, 232 N.J. Super. 144, 556 A.2d 811 (App.Div. 1989) (failure to prevent an intoxicated pedestrian found wandering on the highway from returning there), the circumstances were thought to be such that reasonable policemen in the position of the defendants could have differed about whether or how to act. The disputed decisions were therefore held to be discretionary and the immunity was therefore applicable. In Suarez v. Dosky, 171 N.J. Super. 1, 407 A.2d 1237 (App.Div. 1979), cert. denied, 82 N.J. 300, 412 A.2d 806 (1980) (failure to remove to safety a mother and small children stranded on a multi-lane highway as the result of an accident); and Praet v. Borough of Sayreville, 218 N.J. Super. 218, 527 A.2d 486 (App.Div. 1987), cert. denied, 108 N.J. 681, 532 A.2d 253 (1987) (failure to use proper methods to extricate a person trapped in a car damaged by an accident), the facts were thought to indicate clearly that the duties of the defendant policemen were ministerial rather than discretionary. The privilege conferred by N.J.S.A. 59:3-2(d) was therefore held to be inapplicable. None of these cases expressly considers whether the disputed decisions were made "in the face of competing demands" and required a determination "whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel...." N.J.S.A. *326 59:3-2(d). Cf. Brown v. Brown, supra, 86 N.J. at 576, 432 A.2d 493; Longo v. Santoro, supra, 195 N.J. Super. at 515-16, 480 A.2d 934.
In the present case, if the critical question were whether the failure of the police to provide immediate medical assistance was the result of a discretionary decision, the trial court would have had to submit that issue to the jury. But determination of that question was immaterial because there is no evidence in the trial record that the police consciously considered whether to summon emergency medical assistance and decided not to because they were weighing competing demands on public resources. N.J.S.A. 59:3-2(d) is therefore inapplicable.
The two remaining statutory immunity sections on which defendants have relied, N.J.S.A. 59:3-3 and N.J.S.A. 59:5-2(b)(3), are also inapplicable. N.J.S.A. 59:3-3 declares that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." The plaintiff in the present case is not complaining that the defendants should not have executed or enforced the law. Their duty to execute or enforce the law did not preclude them from providing emergency medical assistance to their arrestee. The immunity for enforcing and executing the law does not protect defendants.
N.J.S.A. 59:5-2(b)(3) provides that "[n]either a public entity nor a public employee is liable for ... any injury caused by ... an escaping or escaped person; or a person resisting arrest...." This section is simply inapplicable on its face.
Defendants' last argument is, as previously mentioned, that they are entitled to a new trial because a factual argument which plaintiffs made during summation should have been barred by collateral estoppel. In view of our disposition of the other issues raised on appeal, it is unnecessary for us to decide this remaining argument.
*327 The judgment appealed from is reversed and the case is remanded to the Law Division for further proceedings not inconsistent with this opinion.
NOTES
[1] "Old Bridge Township Police Department" is probably not a jural entity and is therefore probably not subject to suit in its own name. But the matter was not raised or argued before us. We shall therefore continue to denominate the Department as a separate entity. However, if our surmise is correct, the pleadings should be appropriately amended on remand.
[2] Since the defendants' alleged acts of negligence occurred prior to the Supreme Court's announcement of its decision in Scafidi, the amount of plaintiff's recovery is not subject to the damage rule adopted in that case. See Fischer v. Canario, M.D., 277 N.J. Super. 302, 649 A.2d 875 (App.Div. 1994).
[3] In Perona v. Township of Mullica, 270 N.J. Super. 19, 636 A.2d 535 (App.Div. 1994), plaintiffs alleged that the police had negligently failed to heed their entreaties to take their relative to a psychiatric screening facility, thereby permitting her to attempt suicide. We held that N.J.S.A. 59:6-6 immunized the policemen because its language, "whether to confine a person for mental illness ...," necessarily encompassed policemen who frequently are forced to decide whether to take persons into custody because of mental illness. Id. at 27, 636 A.2d 535. N.J.S.A. 59:6-4 and -5 do not contain language which is comparably pertinent to the present case.