702 A.2d 506

CHRISTINE LUDLOW AND BERNARD LUDLOW, HER HUSBAND, PER QUOD, PLAINTIFFS–APPELLANTS, v. THE CITY OF CLIFTON, THE CITY OF CLIFTON BOARD OF EDUCATION, THE CITY OF CLIFTON CHILD STUDY TEAM—SPECIAL SERVICES, THE CITY OF CLIFTON SUPERINTENDENT OF SCHOOLS, AND DR. TERRANCE BRENNAN, AS DIRECTOR OF SPECIAL EDUCATION/SUPERINTENDENT OF SPECIAL SERVICES FOR THE CITY OF CLIFTON, DEFENDANTS–RESPONDENTS, AND MELINA GUTIERREZ, AN INFANT, GILBERTO GUTIERREZ AND IRMA GUTIERREZ, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued October 20, 1997—Decided November 19, 1997.

Before Judges PETRELLA and SKILLMAN.

*Dennis J. Drasco* argued the cause for appellants (*Lum, Danzis, Drasco, Positan & Kleinberg,* attorneys; *Mr. Drasco,* of counsel and on the brief; *Lisa A. Firko* and *Paul J. Zarbetski,* on the brief).

*Jeffrey W. Mazzola* argued the cause for respondents (*Staehle & Smith,* attorneys; *Mr. Mazzola,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

Plaintiff Christine Ludlow was employed as a nurse at the Child Development Center (CDC), a private day school for emotionally disturbed and autistic children located in Bloomfield. On September 14, 1992, she suffered personal injuries when Melina Gutierrez (Melina), a thirteen-year-old female student at the CDC, assaulted her on the landing of a stairway in the school. Mrs. Ludlow and her husband Bernard Ludlow subsequently brought this action against the City of Clifton Board of Education, its Superintendent of Schools and Director of Special Services, and the Clifton Child Study Team responsible for Melina's placement,[1] alleging that they had negligently placed Melina in the CDC rather than in a more restrictive residential facility. Plaintiffs claimed that Melina suffered from severe psychological problems, including homicidal tendencies, which made her a danger to the safety and well-being of others, and consequently defendants were "palpably unreason-

---

[1] The complaint also named Melina, Melina's parents, and the City of Clifton as defendants. Plaintiffs settled their claims against the Gutierrezes, and the trial court granted the City's motion for summary judgment. Plaintiffs have not appealed from the dismissal of their claims against the City.

able" in failing to place her "in an institution established to handle seriously disturbed children with psychosis."

After discovery was completed, defendants moved for summary judgment, relying upon various immunities provided under the Tort Claims Act, *N.J.S.A.* 59:1–1 to *N.J.S.A.* 59:14–4. The trial court concluded in an oral opinion that defendants' discretionary decision to place Melina at the CDC rather than in a more restrictive residential facility was immunized from liability by *N.J.S.A.* 59:6–6. Accordingly, the court dismissed plaintiff's complaint. Plaintiffs filed a motion for reconsideration, which the court denied. Plaintiffs appeal. We affirm.

*N.J.S.A.* 59:6–6 provides in pertinent part: "Neither a public entity nor a public employee is liable for any injury resulting from determining in accordance with any applicable enactment: (1) whether to confine a person for mental illness or drug dependence; (2) the terms and conditions of confinement for mental illness or drug dependence."

Plaintiffs argue that only discretionary decisions as to whether to confine a person in a medical or mental institution and the terms and conditions of such confinement are immunized from liability under *N.J.S.A.* 59:6–6. Plaintiffs rely upon the comment to *N.J.S.A.* 59:6–6 contained in the *Report of the Attorney General's Task Force on Sovereign Immunity,* which states:

> This section recognizes a specific immunity for the discretionary acts of determining whether to confine such persons and the terms and conditions of their confinement as well as their release. Any claim for compensation resulting from the wrongful confinement in a medical facility or mental institution should be addressed to the Legislature as a moral obligation.
>
> [*Report of the Attorney General's Task Force on Sovereign Immunity* (1972), comment on *N.J.S.A.* 59:6–6, at 229.]

Plaintiffs further argue that defendants' decision to place Melina at the CDC rather than in a more restrictive residential facility did not constitute a decision as to whether to confine her for mental illness.

*N.J.S.A.* 59:6–1 defines "mental institution" to mean "any facility for the care or treatment of persons committed for mental

illness" and it defines "mental illness" to include a "mental disorder bordering on mental illness." Thus, the Legislature clearly intended the immunity provided by *N.J.S.A.* 59:6-6 to apply to any decision relating to confinement for mental illness, regardless of whether that confinement is in a facility specifically described as a mental institution, so long as the facility cares for or treats persons suffering from mental illness or mental disorders bordering on mental illness. Therefore, the linchpin for applicability of the immunity provided by *N.J.S.A.* 59:6-6 is a discretionary decision whether to confine a person for the care and treatment of mental illness rather than the particular type of facility in which a person may be confined.

Moreover, our prior decisions have broadly construed the forms of confinement to which the immunities of chapter six of the Tort Claims Act apply. In *Gianni v. County of Bergen,* 251 *N.J.Super.* 486, 492–93, 598 *A.*2d 933 (App.Div.1991), *certif. denied,* 127 *N.J.* 565, 606 *A.*2d 375 (1992), we held that a person who voluntarily admits himself to a mental institution is nevertheless "confined" if he is prohibited from simply leaving at any time of his own will. In *Perona v. Township of Mullica,* 270 *N.J.Super.* 19, 28, 636 *A.*2d 535 (App.Div.1994), we held that a decision by police officers not to take a person who allegedly threatened to commit suicide into temporary custody constituted a discretionary decision not to confine that person which *N.J.S.A.* 59:6-6 immunized from liability. We reached this conclusion without considering whether such temporary custody would have involved commitment to a mental institution. In *Predoti v. Bergen Pines County Hosp.,* 190 *N.J.Super.* 344, 463 *A.*2d 400 (App.Div.1983), we held that a physician who transferred a mentally ill patient from a closed hospital ward to a less restrictive, open ward had made a confinement decision that was immune under *N.J.S.A.* 59:6-6. In so doing, we pointed out that "[d]ecisions affecting confinement of the mentally ill are usually highly predictive," and that "[b]y immunizing these difficult decisions the Legislature allows them to be made in an atmosphere free from the fear of suit." *Id.* at 347–48, 463 *A.*2d 400.

The California courts have accorded a similar interpretation to the section of the California Tort Claims Act upon which *N.J.S.A.* 59:6–6 is based. Thus, the California Supreme Court has held that the immunity conferred upon public employees who are authorized to request or recommend confinement "extends not only to the final determination to confine or not to confine the person for mental illness, but to all determinations involved in the process of commitment." *Tarasoff v. Regents of University of California*, 17 *Cal.*3d 425, 131 *Cal.Rptr.* 14, 32, 551 *P.*2d 334, 352 (1976); *see also McDowell v. County of Alameda*, 88 *Cal.App.*3d 321, 324, 327, 151 *Cal.Rptr.* 779, 781, 783 (Cal.Ct.App.1979).

The trial court correctly concluded that under this broad view of the immunity provided by *N.J.S.A.* 59:6–6, defendants' alleged negligence in placing Melina at the CDC constituted a discretionary decision whether to confine or recommend her confinement for mental illness. Plaintiffs' claim, as stated in the conclusion to their expert's report, is that "Melina's extreme, long term psychiatric history combined with a family structure that was identified as ill-equipped to deal with her overwhelming problems, required a highly restrictive, residential placement in an institution established to handle seriously disturbed children with psychosis" and consequently defendants were "palpably unreasonable in regard to their evaluation of Melina's condition, her specific need for a restrictive placement, and their failure to place Melina in an appropriate setting." Thus, the question is not, as plaintiffs argue, whether Melina's placement at the CDC constituted confinement for mental illness, but rather whether defendants' failure to place her in the "highly restrictive residential" facility in which their expert contends she should have been placed constituted a discretionary decision not to recommend her confinement for mental illness.

*N.J.S.A.* 18A:46–5(d) confers express authority upon a Child Study Team to "report[ ] and refer[ ] . . . children with handicaps, of such severity as to indicate the necessity of residential placement, medical or psychological treatment, or care, to the appropri-

ate agency for such purpose." Therefore, in determining where to place an emotionally disturbed student, a Child Study Team is required to make a psychological evaluation and can recommend that a student receive a residential placement or psychological treatment rather than being placed in a school environment. Defendants exercised this authority and decided to place Melina at the CDC rather than to recommend her placement in a residential facility for psychological care and treatment. This is the precise type of discretionary decision which *N.J.S.A.* 59:6–6 immunizes from tort liability.

Our conclusion that the trial court properly granted summary judgment under *N.J.S.A.* 59:6–6 makes it unnecessary for us to consider the other immunity provisions of the Tort Claims Act relied upon by defendants.

Affirmed.